NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11917

COMMONWEALTH  vs.  ONYX WHITE.


Suffolk.     December 8, 2015. - September 28, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.[1]


Cellular Telephone.  Constitutional Law, Search and seizure, Probable cause.  Probable Cause.  Search and Seizure, Probable cause, Warrant, Fruits of illegal search. Practice, Criminal, Warrant.



Indictment found and returned in the Superior Court Department on May 19, 2010.

A pretrial motion to suppress evidence was heard by Patrick F. Brady, J.

An application for leave to file an interlocutory appeal was allowed by Cordy, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.


Cailin M. Campbell, Assistant District Attorney (David J. Fredette with her) for the Commonwealth.
J.W. Carney, Jr. (Danya F. Fullerton with him) for the defendant.
The following submitted briefs for amici curiae:

_____

[1] Justices Spina, Cordy, and Duffly participated in the deliberation on this case prior to their retirements.

David A.F. Lewis, Alexis L. Shapiro, & Christine Dieter for Massachusetts Association of Criminal Defense Lawyers.

Vivek Krishnamurthy & Andrew J. Sellars for American Civil Liberties Union of Massachusetts.

Alan Butler & John Tran, of the District of Columbia, Marc Rotenberg, & Caitriona Fitzgerald for Electronic Privacy Information Center.

Afton M. Templin for Committee for Public Counsel Services.

LENK, J.  In February, 2010, a Boston police detective investigating an armed robbery and shooting at a convenience store went to the defendant's high school, after suspicion had focused on the defendant as one of the three perpetrators.  The detective spoke with a school administrator, who informed him that, pursuant to school policy, she was holding the defendant's cellular telephone.  After consultation with his supervisor, the detective seized the telephone to prevent the defendant from retrieving it and removing evidence or destroying the device. At that point, however, the detective had no information that the cellular telephone had been used to plan, commit, or cover up the crime, or that it contained any evidence of the crime. From experience, the detective was aware, however, that cellular telephones frequently are used when an offense involves multiple perpetrators.  Sixty-eight days later, having held -- but not searched -- the telephone throughout that period, police obtained a warrant to search it on the basis of information that had emerged after the seizure.  A forensic search yielded evidence relevant to the investigation, which the defendant then

moved to suppress on the ground that the seizure was not supported by probable cause. A judge of the Superior Court allowed the defendant's motion, and the Commonwealth appealed.

In considering the Commonwealth's appeal, we confront two issues under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. First, we consider whether the seizure was supported by probable cause, and, in particular, whether the detective's opinion that the device was likely to contain evidence, without more, provided probable cause allowing him to seize it. We then examine whether, under the circumstances here, it was reasonable for police to wait almost ten weeks after seizing the device before applying for a warrant to search it.

We conclude that probable cause to search or seize a person's cellular telephone may not be based solely on an officer's opinion that the device is likely to contain evidence of the crime under investigation and, accordingly, that the seizure here was not supported by probable cause. We separately conclude also that, in these circumstances, the Commonwealth has not, in any event, met its burden of demonstrating that the delay of sixty-eight days between the seizure and the application for a search warrant was reasonable. We therefore affirm the Superior Court judge's order allowing the defendant's motion to suppress.

1.  Background.  The following is drawn both from the motion judge's findings and from uncontested facts in the record implicitly credited by him, with certain details reserved for later discussion.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 436 (2015), citing Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

On the morning of February 21, 2010, two men entered a convenience store in the Roxbury section of Boston.  One brandished a gun and demanded money from the clerk, while the other, apparently without a firearm, walked to the rear of the store and demanded money from the victim.  As the victim tried to flee towards the front of the store, he was shot and later died.  The two men then left the store and, along with a third male who had been waiting outside, fled the scene.

The next day, the defendant, then sixteen years old, told his mother that he had participated in a robbery, along with his friend "Martin," and that someone had been shot.  The defendant also stated that he had not believed that anyone had been killed, and that he had been surprised to learn of the victim's death from that morning's newspaper.  Later that day, the defendant's mother called a Boston police officer whom she knew and asked him to visit her at home.

The officer came to the house the next day, February 23, 2010, and the mother told him about her son's asserted

involvement in the robbery. She also said that, earlier that day, the defendant had come to her house to wash his clothes, and had left them in her dryer. Later on the same day, she gave consent to police detectives to search the dryer and to seize the clothing; one of the detectives observed that it resembled clothing worn by one of the perpetrators of a similar convenience store robbery one and one-half months earlier. Also on February 23, 2010, detectives obtained consent from the defendant's grandmother, with whom the defendant lived, to search his bedroom. There, detectives saw a jacket similar to one worn by one of the perpetrators of the robbery-homicide on February 21, 2010. The jacket subsequently was seized pursuant to a search warrant.

The following day, February 24, 2010, the defendant arrived late to his high school. Pursuant to the school's usual practice for all arriving students,[2] he was searched and his "pay-as-you-go"[3] Samsung/Sprint cellular telephone, equipped with a camera, was confiscated. That afternoon, a detective investigating the robbery-homicide met with one of the school's

---

[2] School policy required that all arriving students be searched and "all electronic equipment [be] taken by school authorities and held for the students in individual bins or slots in a locked cabinet."

[3] The user of a "pay-as-you-go" cellular telephone pays the telephone carrier a certain amount of money in advance, which is drawn down as the user makes calls or sends text messages.

administrators.  The administrator told the detective that the defendant had become "agitated" earlier that day and had left the school without picking up his cellular telephone.  The detective notified a supervisor that the school was holding the defendant's telephone.  Neither the detective nor the supervisor had, at that point, any information that a cellular telephone contained evidence of the robbery and shooting, but they were aware, based on their experience, that such devices often contained useful information in cases involving multiple perpetrators.[4]  The supervisor instructed the detective to seize the device without a warrant apparently on the basis of his belief that, if the defendant retrieved the device before a warrant could be obtained, he would destroy the device or erase relevant evidence.  Thereafter, the device was transported to the police station, where it was logged as evidence and placed in a special bag designed "to prevent remote intrusion."  Police did not search the device.

The defendant was arrested later the same day and charged with murder.  In the weeks that followed, detectives assigned to the case applied for and executed five search warrants, interviewed numerous witnesses, assisted with the grand jury

---

[4] Such information may include perpetrators' contact information and logs of their communications with each other.

investigation, and also were assigned to work on two other homicide investigations.

On April 21, 2010, a witness told police that the defendant had participated in multiple robberies similar to the one on February 21, 2010, and that, following one of those other robberies, "the defendant took a photograph of the proceeds of [that other] robbery with his cell phone equipped with a camera." On May 3, 2010, a detective applied for a warrant to search the defendant's cellular telephone, which was still in police possession, for, among other things, photographs related to the robbery.[5] The application was allowed, and police thereafter searched for and seized the aforementioned photograph.[6]

On May 19, 2010, a Suffolk County grand jury returned an indictment against the defendant charging him with murder in the first degree. On May 1, 2014, the defendant filed a motion to suppress the evidence recovered from the cellular telephone.

---

[5] The warrant also sought permission to search for the "subscriber telephone number"; "contact list, address book, calendar, schedules, and date book entries"; "group" and "speed dial" lists; "phone configuration information settings"; "incoming, outgoing, draft, sent and deleted text messages"; "saved, opened, and unopened voice mail messages"; "saved, opened, unopened, draft, sent and deleted electronic mail messages"; "mobile instant message chat logs, data, and contact information"; "any saved and[/]or stored, downloaded, or uploaded photographs"; and "any message alerts or WEB history."

[6] There is no indication whether any other evidence was obtained from the device.

Concluding that the seizure was not supported by probable cause, a Superior Court judge allowed the motion. He also noted that the "delay from February 24 to May 3 [approximately ten weeks] in obtaining the search warrant is . . . troubling." The Commonwealth filed a motion to reconsider and to reopen the evidence. The judge allowed the motion, conducted an evidentiary hearing, and affirmed the order of suppression. The Commonwealth filed an application for leave to pursue interlocutory review in the county court, and a single justice denied the motion. The single justice then allowed the Commonwealth's motion to reconsider, and ordered the appeal to proceed in this court.

2. Discussion. The Commonwealth contends that the motion judge erred because both the seizure of the cellular telephone and the subsequent search were proper under the Fourth Amendment and art. 14.

a. Standard of review. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' . . . We [therefore] 'make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found'" (citations omitted). Commonwealth v. Hernandez, 473 Mass. 379, 382-383 (2015).

b. <u>Seizure</u>. The Fourth Amendment and art. 14 provide "that every person has the right to be secure against unreasonable searches and seizures" of his or her possessions. <u>Commonwealth</u> v. <u>Porter P</u>., 456 Mass. 254, 260 (2010). If the Commonwealth conducts a search or seizure without first obtaining a warrant, the search or seizure is "presumptively unreasonable" and, therefore, presumptively unconstitutional. <u>Commonwealth</u> v. <u>Craan</u>, 469 Mass. 24, 28 (2014). See <u>Commonwealth</u> v. <u>A Juvenile (No. 2)</u>, 411 Mass. 157, 162 (1991). The search or seizure nonetheless may be justified where the Commonwealth can "show that [it] 'falls within a narrow class of permissible exceptions' to the warrant requirement." <u>Craan</u>, <u>supra</u>, quoting <u>Commonwealth</u> v. <u>Perkins</u>, 465 Mass. 600, 603 (2013).

One such exception is where there are "'exigent circumstances' that make obtaining a warrant impracticable." <u>Commonwealth</u> v. <u>Washington</u>, 449 Mass. 476, 480 (2007). To justify a search or seizure on that basis, the Commonwealth bears "a heavy burden" to show (1) that the search or seizure was supported by "probable cause," such that a warrant would have issued had one been sought,[7] and (2) that there

_____

[7] Thus, if police seize property without a warrant because they believe it to contain evidence of a crime, they must already have probable cause supporting the issuance of a warrant to search that property. See, e.g., <u>Illinois</u> v. <u>McArthur</u>, 531

"exist[ed] . . . exigent circumstances" that made obtaining a warrant impracticable.  See Commonwealth v. Tyree, 455 Mass. 676, 684 (2010).  This showing must be based on information known to police at the time, and not on knowledge acquired after the fact.  See Commonwealth v. Antobenedetto, 366 Mass. 51, 66 (1974); Commonwealth v. Holloway, 81 Mass. App. Ct. 910, 911 (2012).

Here, the Commonwealth argues that, based on information then known to police, the seizure of the defendant's cellular telephone was supported by probable cause, and obtaining a warrant was impracticable because of exigent circumstances.  We turn first to the Commonwealth's argument concerning probable cause.

Before police may search or seize any item as evidence, they must have "a substantial basis for concluding that" the item searched or seized contains "evidence connected to the crime" under investigation (citation omitted).  Commonwealth v. Escalera, 462 Mass. 636, 642 (2012).  In other words, the government must "demonstrate[] . . . a 'nexus' between the crime

_____

U.S. 326, 331-333 (2001) (only if police already have probable cause for search may they temporarily seize dwelling for period required to obtain warrant); Commonwealth v. DeJesus, 439 Mass. 616, 619 & n.2 (2003) (same); 3 W.R. LaFave, Search and Seizure § 6.5(c), at 134 (5th ed. 2012) (officers impounding property without warrant must "have probable cause to search the impounded property at the time the impounding is imposed" [citation omitted]).

alleged" and the article to be searched or seized (citation omitted).  See Commonwealth v. Matias, 440 Mass. 787, 794 (2004).  "The nexus 'need not be based on direct observation.' . . .  It may be found in the type of crime, the nature of the [evidence] sought, and normal inferences as to where such" evidence may be found.  Id., quoting Commonwealth v. Cinelli, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983).  While police "need not make a showing beyond a reasonable doubt, . . . '[s]trong reason to suspect is not adequate.'" Commonwealth v. Kaupp, 453 Mass. 102, 111 (2009), quoting Commonwealth v. Upton, 394 Mass. 363, 370 (1985).

"The experience and expertise of a police officer may be considered as a factor in the [nexus] determination." Commonwealth v. West, 55 Mass. App. Ct. 467, 470 (2002). Nonetheless, where the location of the search or seizure is a computer-like device, such as a cellular telephone,[8] the opinions

_____

[8] Based on the warrant application, the cellular telephone in question here appears to have had various capabilities associated with modern computers, including the ability to do the following:  browse the Internet and keep a log of sites visited; send, receive, and store electronic mail messages; support instant messaging; create an address book and calendar; and take and store photographs.  See Commonwealth v. Phifer, 463 Mass. 790, 797 (2012) ("today's cellular telephones are essentially computers"); United v. Flores-Lopez, 670 F.3d 803, 805-806 (7th Cir. 2012) ("a modern cell phone [should be treated as] a computer" even where "the record does not indicate the brand, model, or year of the defendant's cell phone, so we do not know how dumb or smart it is").

of the investigating officers do "not, alone, furnish the requisite nexus between the criminal activity and the [device] to be searched" or seized. Commonwealth v. Anthony, 451 Mass. 59, 72 (2008) (computer search). See Commonwealth v. Kenney, 449 Mass. 840, 846 (2007) ("We do not rely on [the officer]'s conclusion as to what the facts in the affidavit mean to him as 'a talismanic formula' . . . to provide probable cause [to search computer] where evidence to support such a finding is otherwise lacking" [citation omitted]).

Rather, police first must obtain information that establishes the existence of some "particularized evidence" related to the crime. Commonwealth v. Dorelas, 473 Mass. 496, 502 (2016). Only then, if police believe, based on training or experience, that this "particularized evidence" is likely to be found on the device in question, do they have probable cause to seize or search the device in pursuit of that evidence. Id. at 498, 503 (police knew that defendant had been "receiving threatening [tele]phone calls and threatening text messages on his [tele]phone"; probable cause to search telephone for that "particularized evidence").[9]

_____

[9] See Commonwealth v. Kaupp, 453 Mass. 102, 107-114 (2009) (police knew that defendant possessed electronic copies of pirated movies, but not that he had child pornography; officer averred that movies and pornography often stored on personal computer; probable cause only for pirated movies, as police had prior information establishing their existence); Commonwealth v.

Here, prior to seizing the defendant's cellular telephone, police had received information that the robbery and homicide under investigation had been committed by several people, that the defendant likely was one of those people, and that he owned a cellular telephone. They also knew from experience that coventurers often use cellular telephones to communicate with each other, and that these devices may contain evidence of such communications. According to their own statements, however, the detectives here did not have any "information that [a] cell phone was used in the crime under investigation," nor did they claim that there existed a particular piece of evidence likely to be found on such a device. In essence, then, their decision to seize the defendant's cellular telephone was made because (a) they had reason to believe that the defendant had participated with others in the commission of a robbery-homicide and (b) their training and experience in cases involving multiple defendants suggested that the device in question was likely to contain evidence relevant to those offenses.

---

Anthony, 451 Mass. 59, 70-71 (2008) (police knew that defendant collected and transmitted illicit images; probable cause to search computer because detective "opined . . . that individuals who collect [such images] tend to keep this information in various media forms, including computers"); Commonwealth v. Kenney, 449 Mass. 840, 845-846 (2007) (same); Commonwealth v. McDermott, 448 Mass. 750, 764-766, cert. denied, 552 U.S. 910 (2007) ("defendant had asked several coworkers to witness the execution of his will just days before the shootings"; probable cause to search computer for will).

This, without more, does not satisfy the nexus requirement. "Information establishing that a person [may be] guilty of a crime does not necessarily constitute probable cause to search" or seize the person's cellular telephone, even where the police believe, based on their training and experience in similar cases, that the device is likely to contain relevant evidence (citation omitted). Commonwealth v. Pina, 453 Mass. 438, 441 (2009). Rather, even where there is probable cause to suspect the defendant of a crime, police may not seize or search his or her cellular telephone to look for evidence unless they have information establishing the existence of particularized evidence likely to be found there.[10]

The Commonwealth argues, however, that the detectives possessed the functional equivalent of such information in the form of the commonsense notion that "cellular telephones are . . . necessary to social interactions." See Commonwealth v. Augustine, 467 Mass. 230, 245-246 (2014), S.C., 470 Mass. 837 (2015). On this basis, police inferred that, if the defendant planned and committed multiple crimes with two coventurers, it was likely he did so, at least in part, using his cellular

---

[10] Of course, if the device is not seized as evidence, but, for example, is temporarily impounded following an inventory search of an arrestee, this requirement has no relevance. See Illinois v. Lafayette, 462 U.S. 640, 643 (1983) ("justification for such searches [and seizures] does not rest on probable cause").

telephone, and that evidence of these communications would be found on the device.

It may well be the case that "many of [those] . . . who own a cell phone [in effect] keep on their person a digital record of nearly every aspect of their lives," including, presumably, communications with their coventurers. See Riley v. California, 134 S. Ct. 2473, 2490 (2014). Nonetheless, the Commonwealth's argument is unavailing. While probable cause may be based in part on police expertise or on "the practical considerations of everyday life," see Kaupp, 453 Mass. at 111, such considerations do "not, alone, furnish the requisite nexus between the criminal activity and the places to be searched" or seized. Anthony, 451 Mass. at 72. See Pina, 453 Mass. at 441-442 (officer's practical experience insufficient basis for probable cause where no "particularized information").

Moreover, the argument simply "proves too much." See Coolidge v. New Hampshire, 403 U.S. 443, 480 (1971) (rejecting Fourth Amendment argument that would sweep too broadly). In essence, the Commonwealth is suggesting that there exists a nexus between a suspect's criminal acts and his or her cellular telephone whenever there is probable cause that the suspect was involved in an offense, accompanied by an officer's averment that, given the type of crime under investigation, the device likely would contain evidence. If this were sufficient,

however, it would be a rare case where probable cause to charge someone with a crime would not open the person's cellular telephone to seizure and subsequent search. See Riley, 134 S. Ct. at 2492 (only "inexperienced or unimaginative law enforcement officer . . . could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone"). We cannot accept such a result, which is inconsistent with our admonition that "individuals have significant privacy interests at stake in their [cellular telephones] and that the probable cause requirement . . . under both the Fourth Amendment . . . and art. 14 . . . [must] serve[] to protect these interests." See Dorelas, 473 Mass. at 502 n.11.[11]

---

[11] These interests exist even where, as here, the device does not appear to have all the capabilities of an upmarket "smart phone." See Flores-Lopez, 670 F.3d at 806 ("Even the dumbest of modern cell phones gives the user access to large stores of information"; "pay-as-you-go" cellular telephone "sold by Walgreens for $14.99, includes a camera, MMS [multimedia messaging service] picture messaging for sending and receiving photos, video, etc., mobile web access, text messaging, voicemail, call waiting, a voice recorder, and a phonebook that can hold 1000 entries"). Were the device to possess the enhanced capabilities of a "smart phone," that would merely implicate even greater privacy concerns. See Riley v. California, 134 S. Ct. 2473, 2491 (2014) ("cell phone search would typically expose to the government far more than the most exhaustive search of a house"); United States v. Wurie, 728 F.3d 1, 8 (1st Cir. 2013), aff'd sub nom. Riley v. California, supra (cellular telephones contain "the kind of information one would previously have stored in one's home").

The detectives here lacked any information establishing the existence of evidence likely to be found on the defendant's cellular telephone. We conclude, accordingly, that they lacked the nexus required for probable cause to seize that device. Lacking probable cause, the seizure was by definition improper,[12] and we need not address whether there were exigent circumstances justifying the decision to do so without a warrant.

c. Search. Here, police eventually obtained a search warrant and searched the defendant's cellular telephone for evidence of the robbery-homicide. Because the device initially was seized without a warrant, evidence recovered as a result of the search is not admissible unless the Commonwealth meets its burden of demonstrating that the search was reasonable.[13] See Craan, 469 Mass. at 28.

_____

[12] The Commonwealth suggests that the seizure nonetheless was proper under the plain view doctrine. See Commonwealth v. Perkins, 465 Mass. 600, 603-604 (2013) ("Under [the plain view] doctrine, if police are lawfully in a position from which they [inadvertently encounter] an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant"). This argument fails, at a minimum, because the warrantless seizure of evidence found in plain view is proper only where "there is probable cause to associate the property with criminal activity." Commonwealth v. Balicki, 436 Mass. 1, 8 n.10 (2002), quoting Payton v. New York, 445 U.S. 573, 587 (1980). Here, as discussed, there was no such probable cause.

[13] The fact that, following the warrantless seizure, a search warrant was obtained does not shift the burden of this inquiry to the defendant. See State v. Johnson, 335 Or. 511, 521 (2003) (burden to prove reasonableness remains with State

The Commonwealth has not met this burden for two independent reasons.  First, the Commonwealth has not shown that the delay between the seizure and the filing of the application for a search warrant was reasonable.[14]  Second, the search was the fruit of a seizure made without probable cause.  As a result, any evidence obtained from the search must be suppressed.

i.  Length of delay.  Police may retain an item seized without a warrant for "the relatively short period of time needed . . . to obtain a search warrant," but must release the item if a warrant is not obtained within that period.  Commonwealth v. Gentile, 437 Mass. 569, 573 (2002), quoting Commonwealth v. Taylor, 426 Mass. 189, 195 (1997).  For this reason, once a warrantless seizure has been executed, the police "must make it a priority to secure a search warrant that complies with the Fourth Amendment.  This will entail diligent

where evidence seized without warrant even though search warrant ultimately obtained).  Cf. Commonwealth v. Midi, 46 Mass. App. Ct. 591, 595 (1999) (where "evidence derived from prior illegality," "burden [on] the government to prove that the taint was attenuated enough to allow admission").

[14] The Commonwealth contends that the issue of the delay is not properly before us because the defendant did not raise it in the Superior Court.  The issue of the delay was noted in the motion judge's first memorandum of decision, however, following which an evidentiary hearing was conducted at the Commonwealth's request.  At that hearing, it was the Commonwealth's burden to present evidence establishing the reasonableness of the delay.  Based on the evidence introduced, we are in a position to assess whether the Commonwealth met its burden.

work to present a warrant application to the judicial officer at the earliest reasonable time."  See United States v. Burgard, 675 F.3d 1029, 1035 (7th Cir.), cert. denied, 133 S. Ct. 183 (2012).  If the police fail to do so, the seizure, even if "reasonable at its inception because based upon probable cause," "may become unreasonable as a result of its duration."  Segura v. United States, 468 U.S. 796, 812 (1984).  See Burgard, supra at 1032 ("When officers fail to seek a search warrant, at some point the delay becomes unreasonable and is actionable under the Fourth Amendment").

There is "no bright line past which a delay becomes unreasonable."  See Burgard, supra at 1033.  Rather, the reasonableness of the delay is determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  United States v. Place, 462 U.S. 696, 703 (1983).  See Kaupp, 453 Mass. at 106. "[C]ourts have identified several factors highly relevant to this inquiry," see United States v. Laist, 702 F.3d 608, 613 (11th Cir. 2012), among them, and of particular importance here, whether police acted "diligen[tly] in obtaining the warrant." Id. at 614.

The Commonwealth argues that the delay of sixty-eight days was justified by the complexity of the investigation.  During

the period between the seizure of the cellular telephone and the filing of the application for a search warrant, the detectives were involved in "interviews of witnesses, an ongoing grand jury investigation, and the application for and execution of [five] other search warrants."  Where an investigation is highly complex, "courts 'can almost always imagine some alternative means by which the objectives of the police might have been accomplished,' but that does not necessarily mean that the police conduct was unreasonable" (citation omitted).  See Burgard, 675 F.3d at 1034.  In addition, the Commonwealth notes that, during the period immediately following the seizure in question, the team of detectives assigned to this case apparently also was assigned to two other homicide investigations.  See Laist, 702 F.3d at 614 ("we consider . . . whether overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case" [citation omitted]).  Because of the detectives' responsibilities in this and other cases, there existed, in the Commonwealth's view, an "importan[t] . . . governmental interest[]," see Place, 462 U.S. at 703, in delaying the application for a search warrant until the police had time to focus properly on that task.

Although the information to which the Commonwealth points might go some way in explaining the reasons for the delay, it

does not suffice to meet the Commonwealth's burden of demonstrating that the delay was reasonable.  We do not question that the detectives diligently performed their difficult jobs. The relevant inquiry, however, does not concern the detectives' general diligence in performing their duties, but, rather, whether they acted "diligen[tly] in obtaining the warrant." Laist, 703 F.3d at 614.  Once police seized the defendant's cellular telephone without a warrant, they were required to "make it a priority" to acquire one.  See Burgard, 675 F.3d at 1035.

Here, it does not appear that they did so, having instead focused on, among other things, applying for and executing five other search warrants related to this case.  There also is no evidence that the complexity of the warrant application itself caused the approximately ten-week delay, or that the detectives' responsibility for other cases prevented them from working on this one.  Contrast Burgard, supra at 1034-1035 (six-day delay reasonable where officer called away to work on another case and where he requested help from others, including from assistant United States attorney, to draft affidavit).  On this record, the Commonwealth has not shown that the prolonged delay following the warrantless seizure was reasonable.

The Commonwealth contends, however, that, even if police had a relatively minimal interest in waiting to apply for a

warrant, their actions were proper because the defendant did not exhibit a significant "possessory interest" in his cellular telephone.  See Laist, 702 F.3d at 613 (courts consider "significance of the interference with the person's possessory interest").  In particular, the Commonwealth notes that the cellular telephone at issue was a "pay-as-you-go" device, that the defendant possessed another such device, and that the defendant did not request that the device be returned.

This argument does not carry the day.  Possessory interest is only one factor to be considered in the over-all reasonableness calculus.[15]  See id. at 613-614.  Even in circumstances where a defendant's possessory interest is weak, a delay may be unreasonable if police do not act diligently in applying for a warrant.  This is so in part because unreasonable delay "affects [not] only the person's possessory interest[]," but also the ability of the judiciary "promptly [to] evaluat[e] and correct[] improper seizures."  See Burgard, 675 F.3d at 1033, quoting Segura, 468 U.S. at 806.

Because the Commonwealth has not demonstrated that the police acted diligently in applying for a warrant, we conclude

---

[15] We also do not share the view that the defendant's possessory interest was lessened because he owned a "pay-as-you-go" cellular telephone.  See Pew Internet & American Life Project, Teens and Mobile Phones, at 20 (Apr. 20, 2010) (such devices common among people who cannot afford subscription plans).

that it has not met its burden to show that the delay of sixty-eight days from the time the device was seized to the date of the search warrant application was reasonable.

ii. Fruit of unreasonable seizure. Even if the delay were reasonable, any evidence recovered from the telephone would nonetheless require suppression on the ground that it was the fruit of an unlawful seizure.

"The general rule is that evidence is to be excluded if it is found to be the 'fruit' of a police officer's unlawful actions."[16] Commonwealth v. Balicki, 436 Mass. 1, 15 (2002), citing Wong Sun v. United States, 371 U.S. 471, 484 (1963). Where an item is seized without probable cause, the item and its "fruits" may not be introduced in evidence. See Commonwealth v. Keefner, 461 Mass. 507, 518 (2012), quoting Wong Sun, supra at 488 (evidence from search without probable cause, including "cellular telephone" and "all text messages" on telephone, "must be suppressed under the 'fruit of the poisonous tree' doctrine"); Upton, 394 Mass. at 364 ("exclusionary rule requir[es] the exclusion of evidence seized without a showing of probable cause"). That probable cause for a seizure emerges at

_____

[16] Although suppression may not always be required where evidence was seized unlawfully, the Commonwealth has not argued that any recognized exception is applicable here. See, e.g., DeJesus, 439 Mass. at 624 (independent source doctrine); Commonwealth v. Sbordone, 424 Mass. 802, 810 (1997) (inevitable discovery doctrine).

some point after the seizure occurred does not alter this conclusion. See, e.g., Upton, supra at 367-368; Commonwealth v. Wedderburn, 36 Mass. App. Ct. 558, 563 (1994). Cf. United States v. Reed, 443 F.3d 600, 603 (7th Cir.), cert. denied, 549 U.S. 874 (2006). Here, because the cellular telephone was seized unlawfully, without probable cause, any evidence recovered from it must be suppressed.

Order allowing motion
to suppress affirmed.