The Commonwealth appeals from a Superior Court judge's orders suppressing certain statements and cellular telephone (cell phone or phone) data gained from the defendant during the course of a murder investigation. For the reasons set forth below, we affirm those orders.
Background. The defendant, Brandon Wangnoon, stands indicted for the October 9, 2014, murder of Daniel Esdale, and for subsequently misleading the police during the ensuing investigation. He filed two motions to suppress evidence: one seeking the suppression of statements he made to police during interviews conducted on October 13, 2014, and October 20, 2014, and another seeking to suppress evidence from a search of his cell phone, which the police obtained during the October 13 interview.
The judge held an evidentiary hearing on the motions. Three witnesses testified, including Sergeant Robert Kilnapp[2] of the State police. The judge also received video recordings of the defendant's police interviews. We summarize the facts found by the judge, supplemented by undisputed evidence introduced at the evidentiary motion hearing.
On October 12, 2014, two friends of the victim reported to police that they found his body in his third-floor apartment. The victim had been shot to death, and police determined, from a voice mail message left by the victim, that the shooting occurred around 4:50 P.M . on October 9, 2014. Police interviewed Antonio Pinto, who lived below the victim in a second-floor apartment in the victim's building. Pinto told them that he was with the defendant, his cousin, at the defendant's house at the time of the shooting.
Seeking to corroborate Pinto's statement, on October 13, 2014, the police asked the defendant to come to the Brockton police station for an interview. The defendant agreed, and at the station, Sergeant Kilnapp and Trooper Kevin McDermott interviewed him. The defendant told the police that on the day in question, he arrived at Pinto's apartment at about 2:40 P.M. and left within minutes to go to the defendant's house. He said that he met Pinto in the building but outside his apartment, and that he did not see anyone else. The defendant said that they arrived at the defendant's house at about 3:00 or 3:30 P.M. and that Pinto stayed for a couple of hours.
The police questioned the defendant about cell phone calls made on the day of the murder, and asked to see his call history. The defendant freely turned on his phone, located the call history, and several times showed it to Sergeant Kilnapp, and even allowed him to scroll through it himself. He also disclosed that he deleted the history of his calls with Pinto. Sergeant Kilnapp then asked the defendant to consent to a download of his phone data. The defendant said, "No." He added that he did not think that the police needed to download data from his phone. Sergeant Kilnapp said, "I think we do." He then asked the defendant again to consent to the data download. The defendant again answered, "No." Sergeant Kilnapp responded that they might have to seize the phone as "potential evidence" in a homicide, and asked the defendant for the phone passcode. The defendant asked if they wanted the passcode so police would not have to "break through it." Trooper McDermott answered, "That's pretty much what's going to happen." Sergeant Kilnapp assured the defendant that if he signed a consent form allowing the police to search the phone data, "they would give the phone right back to him," but if he refused, the police would "seize" it and "hold it as evidence." The defendant agreed to sign the consent form and disclosed the passcode. Sergeant Kilnapp told the defendant that after they downloaded the phone data they would telephone the defendant's mother to let him know he could come back to the station to get his phone. The defendant then signed the form, and handed his phone to the police, who allowed him to leave. Contrary to their assurances, the police never returned the phone.
On October 20, 2014, a State trooper and a Brockton police detective arrived at the defendant's home and asked him to come to the station for another interview. After speaking with his father, the defendant reluctantly agreed. The police asked the defendant to go over again the chronology of where he and Pinto were during the shooting. The defendant's responses were consistent with his first interview. At one point, the trooper informed the defendant that one of his text messages showed he was still in the victim's apartment building at the time of the shooting. The trooper pointed out that this was inconsistent with the defendant's story. The defendant then admitted he was in the victim's apartment building at the time of the shooting. He also admitted that he and Pinto were in the victim's third-floor apartment for about two hours that afternoon, but left to go to Pinto's second-floor apartment when the victim said he was going to the gym. From Pinto's apartment, they heard a disturbance from the building's entrance and heard multiple people running up the stairs. The defendant admitted they then heard yelling, and three or four gunshots, followed by the sound of people running down the stairs.
The judge concluded that the police wrongfully seized the defendant's cell phone. With the exception of the call history not deleted at the time police took the phone (which the defendant freely showed police), the judge suppressed all information obtained from it, including text messages and deleted call history. The judge also allowed, in part, the defendant's motion to suppress statements he made during the October 20 interview, suppressing all statements he made after the trooper confronted him with his text message placing him in the victim's building at the time of the shooting. The judge did not suppress any statements made during the October 13 interview. A single justice of the Supreme Judicial Court granted the Commonwealth's application for an interlocutory appeal, and the case was docketed in this court.
Discussion. The Commonwealth contends that the judge erred in suppressing the defendant's statements and the data recovered from his cell phone because the defendant consented to the search of his phone. Alternatively, the Commonwealth submits that even absent the defendant's consent, the police had probable cause to seize the phone as potential evidence in their investigation. We conclude that both arguments are unavailing.
Generally, the police are required to obtain a warrant before searching a person's cellular telephone. Riley v. California, 134 S. Ct. 2473, 2493 (2014) ("a warrant is generally required before [a search of a cell phone]"). See Commonwealth v. Sheridan, 470 Mass. 752, 763 (2015). The Commonwealth argues that a warrant was unnecessary because the defendant consented to the search of his phone. To justify a warrantless search based on consent, the Commonwealth must prove that the defendant voluntarily consented to the search. Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976), and cases cited. Such consent must be given "freely and voluntarily." Commonwealth v. Krisco Corp., 421 Mass. 37, 46 (1995). Consent is given freely and voluntarily when it is "unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority." Commonwealth v. Sanna, 424 Mass. 92, 97 (1997) (quotations omitted). See Bumper v. North Carolina, 391 U.S. 543, 548-549 (1968). "The voluntariness of an individual's consent ... must be examined in light of the totality of the circumstances of the case." Commonwealth v. Rogers, 444 Mass. 234, 238 (2005). See Commonwealth v. Harmond, 376 Mass. 557, 561 (1978) (voluntariness of consent is question of fact to be determined in circumstances of each case).
Here, while the defendant clearly consented to Sergeant Kilnapp's request to view his call history, he just as clearly refused to consent to a search of his phone data, including data he deleted from his call history. Sergeant Kilnapp twice asked the defendant for permission to download his phone data and the defendant twice refused. The defendant only agreed to sign the consent form to search his phone, and to disclose the password, after the police told him that if he did not they would seize the phone as evidence and "break through it." At that point, the police presented defendant with more of a dilemma than a free choice: either consent to the data download from his phone, and get it right back, or have the police seize it and hold it as evidence.
We agree with the judge's conclusion that "[t]he choice provided to the defendant was not between allowing the search or preventing the search." The police told the defendant they would extract his phone data whether he consented or not. Thus, the defendant's purported consent was not "unfettered by coercion, express or implied"; instead, it was no more than "acquiescence to a claim of lawful authority." Commonwealth v. Sanna, supra (quotations omitted). See Commonwealth v. Harmond, supra.
The Commonwealth argues that the defendant's consent was valid because the police's characterization of his options was accurate, in that Sergeant Kilnapp merely explained to the defendant the reality of the situation: if he did not consent, the police would seize his phone and apply for a search warrant.[3] However, this argument is flawed because at the time, the police lacked probable cause to seize the phone.
"Before police may search or seize any item as evidence, they must have 'a substantial basis for concluding that' the item searched or seized contains 'evidence connected to the crime' under investigation." Commonwealth v. White, 475 Mass. 583, 588 (2016), quoting from Commonwealth v. Escalera, 462 Mass. 636, 642 (2012). In other words, the Commonwealth must demonstrate "a nexus between the crime alleged and the article to be searched or seized." Commonwealth v. Matias, 440 Mass. 787, 794 (2004) (quotation omitted). While police "need not make a showing beyond a reasonable doubt, ... strong reason to suspect is not adequate." Commonwealth v. Knapp, 453 Mass. 102, 111 (2009) (quotation omitted). Only when police have information that establishes the existence of some "particularized evidence" related to the crime being investigated, that they believe is likely to be found on the device in question, will probable cause be supported. Commonwealth v. Dorelas, 473 Mass. 496, 498, 502 (2016).[4]
The police did not have probable cause to believe that the defendant's phone contained evidence relating to the victim's death. At the time of the October 13 interview, the police considered the defendant's role in the investigation to be that of a witness. They had no cause to believe that the defendant was a suspect, or that he played a part in the victim's death. The police knew only that the phone contained deleted call history that would show that the defendant communicated with Pinto because the defendant told them so. While police may have suspected that the defendant knew more than he was saying, this, without more, does not satisfy the nexus requirement. Thus, because the police lacked probable cause to support their statement to the defendant that they could seize the phone as evidence, his consent was not free and voluntary, and cannot justify the search. Therefore, we agree with the judge's conclusion that the evidence obtained following the seizure of the defendant's phone, including inculpatory statements made by the defendant after being confronted with the text message placing him near the scene at the time of the murder, must be suppressed as "fruit of the poisonous tree." Commonwealth v. Jacobson, 419 Mass. 269, 275 n.7 (1995), quoting from Wong Sun v. United States, 371 U.S. 471, 488 (1963). The judge's orders are affirmed.[5]
So ordered.
Affirmed in part.

We adopt the spelling of Kilnapp's name as he spelled it during the hearing on the motions to suppress.

After obtaining the phone, the police did not seek a warrant to search its contents.

Furthermore, even where there is probable cause to suspect a person of a crime, police may not seize or search that person's cell phone to look for evidence "unless they have information establishing the existence of particularized evidence to be found there." Commonwealth v. White, supra at 590-591.

The Commonwealth's insistence that it was not given notice that probable cause was to be an issue at the evidentiary hearing and that the judge prevented it from arguing the issue is not persuasive. The defendant's motion to suppress clearly stated that "[t]he initial seizure of the cell phone without a warrant was per se unreasonable and cannot be justified by any narrowly tailored exception to the warrant requirement, namely consent." The motion was sufficient to put the Commonwealth on notice to meet its burden of showing that the warrantless seizure was proper under any relevant legal theory. Furthermore, the Commonwealth's assertion that it possessed additional evidence supporting a finding of probable cause is belied by the record. At the hearing, Sergeant Kilnapp testified unequivocally that, at the time of the October 13 interview, the defendant was not a suspect, the police had no information that the defendant was involved in the shooting, and that the sole reason for that interview was to gain information about his interactions with Pinto. Thus, the judge properly denied the Commonwealth's motion to reconsider. See Commonwealth v. Pagan, 73 Mass. App. Ct. 369, 375 (2008) (suppression hearings not "a dress rehearsal" requiring "do-overs" when adverse ruling results).