ENGLANDER, J.
This case presents the question whether the police unreasonably delayed obtaining a warrant to search the contents of cellular telephones[1] (second warrant), where those cell phones had already been properly seized pursuant to a lawful first warrant *1191 and were being held as evidence pending trial. A Superior Court judge held that the delay in seeking the second warrant was unreasonable under Commonwealth v. White, 475 Mass. 583, 59 N.E.3d 369 (2016), and suppressed the fruits of the search conducted pursuant to the second warrant. We reverse, concluding that the delay in seeking the second warrant was not unreasonable, where the cell phones were already lawfully in police custody and were reasonably expected to remain so until trial.
Background.[2] On December 15, 2015, the defendant and two accomplices, Richie Williams and Keyarn Richardson, participated in a coordinated attack on a home at 7 Morse Street in the Dorchester section of Boston. Much of the attack was witnessed by various Boston police officers, who were in the area at the time. At approximately 4:30 P.M. two cars drove onto Brinsley Street, one street away from and parallel to the block of 7 Morse Street. The defendant was driving one of the cars and was alone. Williams was driving the other car, with Richardson in the front passenger seat. Both cars parked on Brinsley Street, facing in the same direction.
Shortly after parking, Williams and Richardson got out of their car (leaving the engine running), walked briskly down Brinsley Street, and turned onto Ronald Street (a cross street), heading in the direction of Morse Street. Shortly thereafter, Richardson was observed stepping behind a Dumpster, taking out a firearm, and "chamber[ing] a round into the firearm." He thereafter was observed on Morse Street handing a firearm to Williams.
At the same time that Williams and Richardson were walking toward Morse Street, the defendant got out of his car on Brinsley Street and began peering through the yards toward the area of 7 Morse Street "as if he was waiting to see something occur."
Shortly thereafter, shots were heard coming from Morse Street. Williams and Richardson then were observed running down Morse Street, with Williams holding a gun in his hand. Police officers ordered them to stop, but Williams continued running to Brinsley Street and, after discarding his firearm, got into the passenger seat of the defendant's car. The defendant had, by this time, returned to his car, but before he could drive away with Williams they were stopped and arrested by the police. Later, the police confirmed that multiple bullets had been fired into the home at 7 Morse Street, although no one had been injured.
An officer on the scene observed two cell phones in the defendant's car -- one on the driver's seat and one on the front passenger's seat. The officer observed three cell phones in the car initially driven by Williams -- two on the driver's seat and one in the passenger's side door handle. The police impounded both cars.
Three days after impoundment, on December 18, 2015, the police sought and received the first warrant to search both cars and to seize all the cell phones. The affidavit in support of the first warrant set forth, among other things, the facts of the *1192 coordinated attack listed above. The affidavit specifically identified where the cell phones were located and requested authorization to "seize" them. The warrant was executed on the same day, the cell phones were seized, and they were thereafter held as evidence.
The Commonwealth did not seek to view the contents of the cell phones, however, until eighty-five days after the impoundment. On March 9, 2016, the Commonwealth sought the second warrant, this time specifically requesting to search the "electronic data" of each of the seized cell phones. The affidavit in support of the second warrant added four new paragraphs to the affidavit submitted on December 18, 2015; the new paragraphs provided additional grounds for searching the data on the cell phones. The second warrant was issued on the same day, and the cell phones were searched.
On April 1, 2016, the defendant was indicted for two counts of armed assault with intent to murder, in violation of G. L. c. 265, § 18 (b ) ; two counts of attempted assault and battery by discharging a firearm, in violation of G. L. c. 265, § 15F ; and possession of a firearm without a license, second offense, in violation of G. L. c. 269, § 10 (h ) (1). The defendant thereafter moved to suppress evidence found as a result of the search of the two cell phones found in his vehicle. He contended (1) that the eighty-five-day delay in seeking the second warrant rendered the search unreasonable under the holding in White, and (2) that in any event the affidavit in support of the second warrant failed to show a sufficient nexus between the cell phones and the alleged criminal activity. The Commonwealth responded, among other things, that the cell phones had been seized pursuant to a valid warrant and that the police were going to maintain possession of the cell phones through trial whether or not the cell phones were forensically examined.[3]
The judge granted the suppression motion.[4] As to the delay issue, he ruled that the circumstances were essentially indistinguishable from White, rejecting the argument that this case differs from White because here the cell phones had been initially seized pursuant to a warrant. The Commonwealth appealed.
Discussion. 1. The issue of unreasonable delay. The principal question before us is whether the judge was correct in suppressing the fruits of the searches of the cell phones on the ground that the delay in obtaining the second warrant was unreasonable. We hold that the suppression order was not correct because this case is materially distinguishable from White.
The White decision involved the warrantless seizure by the police of the cell phone of a high school student. White, 475 Mass. at 586, 59 N.E.3d 369. The student-owner of the cell phone was a suspect in a robbery-murder at a convenience store, involving multiple perpetrators. Id. at 585-586, 59 N.E.3d 369. At the time of the seizure, the police had no particularized reason to believe the student's cell phone was involved in the crime; instead, the officers' belief that the cell phone might contain evidence was based entirely on experience and generalized reasoning that, where the robbery was a joint venture, the cell phone might contain relevant evidence.
*1193 Id. at 590, 59 N.E.3d 369. After seizing the cell phone without a warrant, the police did not seek a warrant to search the contents of the cell phone for sixty-eight days. See id. at 584-585, 59 N.E.3d 369.
The court in White first held that the police lacked probable cause to seize the cell phone because the police lacked any particularized evidence linking the cell phone to the crime. Id. at 589-591, 59 N.E.3d 369. While this conclusion resolved the suppression motion, the court went on to rule that the sixty-eight-day delay in seeking a warrant also rendered the search unreasonable. Id. at 593-595, 59 N.E.3d 369. As to the delay issue, the court emphasized that when an item is seized without a warrant the police must act "diligently" to obtain a warrant and to search the item. Id. at 595, 59 N.E.3d 369. The court reached its result by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Id. at 593-594, 59 N.E.3d 369 (quotation omitted).
This case is different from White in two critical respects. First, in this case the police did diligently obtain a warrant to seize the cell phones -- within three days of the impoundment of the vehicles. The defendant does not challenge the legality of that seizure or the adequacy of the first warrant affidavit. Second, in this case there was particularized evidence that the cell phones were used in the commission of the crime. Here the police observed the crime in process. It appeared to be a coordinated attack carried out using separate automobiles, where one could readily infer that the occupants had been in communication. The occupants arrived and left the vehicles in sequence. When they left the vehicles they also left multiple cell phones on the seats of the cars, leading to the reasonable inference that the cell phones had been used to coordinate the crime.
The Commonwealth argues that on these facts the cell phones were "evidence of the crime independent of their content," and thus that the cell phones would be maintained as evidence for trial regardless of whether their contents were ever searched. We agree. The cell phones themselves would be relevant evidence at trial to provide detail as to how the crime was planned and coordinated. Put another way, in proving the joint venture, and the involvement of all three alleged perpetrators, the Commonwealth might well decide to introduce the cell phones, where they were located, and how they were found after the arrests. This evidentiary value existed regardless of whether, on further investigation, the cell phones might contain additional relevant evidence in their digital data.
It follows that the delay in seeking the second warrant was not unreasonable here, because unlike in White, here the police were already lawfully in possession of the cell phones and would be through trial.[5] There was thus no substantial interest under the Fourth Amendment to the United States Constitution requiring that the search of the contents of the cell phones occur expeditiously. Under the balancing test described in White, here the government had a substantial interest in maintaining the cell phones as evidence until trial; and, on the other hand, the *1194 defendant's possessory interest in the cell phones during the delay carried no significant weight, as the defendant showed no basis to expect that the cell phones would have been returned to him during those eighty-five days or, indeed, at any time before trial. See G. L. c. 276, § 3 ; White, 475 Mass. at 593-595, 59%20N.E.3d%20369">59 N.E.3d 369.[6] ,[7]
2. The nexus requirement.[8] The defendant also argues that the second warrant affidavit was insufficient to justify a search of the cell phones because the affidavit did not show a sufficient nexus between the cell phones and the crime. The judge rejected this argument, and we agree, for many of the same reasons we have already stated. The facts here support the reasonable inference that the defendant's cell phones were used to communicate with his coventurers regarding the crime in the period leading up to, and immediately preceding, the attack at 7 Morse Street. As the White court noted, the nexus "need not be based on direct observation.... It may be found in the type of crime, the nature of the [evidence] sought, and normal inferences as to where such evidence may be found." White, 475 Mass. at 589, 59 N.E.3d 369 (quotation omitted). We have also said that, "[i]n dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Commonwealth v. Gentile, 437 Mass. 569, 573, 773 N.E.2d 428 (2002) (citation omitted).
The particularized facts linking the cell phones to the crime distinguish this case from White and cases such as Commonwealth v. Morin, 478 Mass. 415, 427-428, 85 N.E.3d 949 (2017), where the court found such particularized facts lacking. In this case "the factual and practical considerations of everyday life" tell us that the cell phones found on the car seats likely were used to coordinate the crime, including an exchange of calls, text messages, and perhaps other information in the days, hours, and minutes leading up to the attack. Gentile, supra. This case thus falls in line with those cases that have found particularized facts to support a search of the contents of a cell phone. See, e.g., *1195 Commonwealth v. Cruzado, 480 Mass. 275, 282, 103 N.E.3d 732 (2018) (probable cause to search cell phone found next to sleeping defendant, where he had been recently overheard on a cell phone confessing to crime); Commonwealth v. Holley, 478 Mass. 508, 522-524, 87 N.E.3d 77 (2017) (sufficient nexus to search cell phone contents where defendant telephoned victim while entering victim's residence shortly before shooting connected to drug transaction); Commonwealth v. Perkins, 478 Mass. 97, 104-106, 82 N.E.3d 1024 (2017) (warrant established probable cause to search call logs of seized cell phones where police had knowledge of defendant's cell phone use to arrange drug transactions); Commonwealth v. Dorelas, 473 Mass. 496, 502-504, 43 N.E.3d 306 (2016) (probable cause to search cell phone where witness reported defendant receiving threats on his cell phone before shooting).
The order granting the motion to suppress is accordingly reversed.
So ordered.

Hereinafter cell phones.

The facts herein are taken from the judge's decision on the motion to suppress, which, in turn, were taken from the four corners of the two warrant affidavits at issue. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law.... We [therefore] make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." White, 475 Mass. at 587, 59 N.E.3d 369 (quotation omitted).

In connection with this latter argument, the Commonwealth cited G. L. c. 276, § 3, which addresses the obligation to maintain evidence seized pursuant to a search warrant.

The judge held an evidentiary hearing on the issue of the reasonableness of the delay. The judge found the affiant's testimony credible and adopted the testimony as part of the factual findings.

The United States Supreme Court's decision in Riley v. California, --- U.S. ----, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), is not implicated by this case. The Court in Riley held that a search warrant generally must be obtained before searching the contents of a cell phone that was seized incident to an arrest, and without a warrant. Id. at 2484-2485. Unlike in Riley, a search warrant was obtained here.

The defendant seems to suggest that under G. L. c. 276, § 3, the Commonwealth was obligated to search the cell phones and then to return them prior to trial because "the value of the evidence is not the items themselves, but their electronic contents." This argument does not account for the fact that the cell phones have evidentiary value independent of their contents. While items seized must be returned "when [they are] no longer needed," Commonwealth v. Sacco, 401 Mass. 204, 207 n.3, 515 N.E.2d 1185 (1987), the defendant cites no authority that suggests that items properly seized to be used as evidence at trial must be returned beforehand. See generally Commonwealth v. Murray, 359 Mass. 541, 547, 269 N.E.2d 641 (1971). Compare United States v. Mitchell, 565 F.3d 1347, 1352 (11th Cir. 2009) ("[t]he purpose of securing a search warrant soon after a suspect is dispossessed of a closed container reasonably believed to contain contraband is to ensure its prompt return should the search reveal no such incriminating evidence, for in that event the government would be obligated to return the container [unless it had some other evidentiary value ]" [emphasis added] ).

Although in his appellate brief the defendant appears to assert an ownership interest in the cell phones, we note that the defendant did not move for the return of the cell phones pursuant to rule 61 of the Rules of the Superior Court (2018). See Sacco, 401 Mass. at 206-207, 515 N.E.2d 1185.

In determining whether an affidavit justifies a finding of probable cause, all reasonable inferences that may be drawn from the information in the affidavit are considered as to whether probable cause has been established. Commonwealth v. Dorelas, 473 Mass. 496, 501, 43 N.E.3d 306 (2016).