NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-395

COMMONWEALTH

vs.

MICHAEL P. PIRCIO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a jury of the voluntary manslaughter of William Porter, the defendant appeals. He argues that the motion judge erred in denying his motions to suppress his statements and evidence that police seized from his cell phone and from a laptop computer. The judge concluded that the defendant was not in custody when he made the statements that were introduced at trial, that police properly seized the cell phone and then got a warrant before searching it, and that the defendant's girlfriend Mary Hill consented to the search of the laptop and had actual authority to do so. We affirm the conviction.

Background. We set forth the facts found by the motion judge after an evidentiary hearing, supplemented by our own

review of documentary evidence including recordings of two 911 calls.

At about 11:30 P.M. on February 20, 2017, the defendant telephoned 911 and asked police to respond to the Brockton apartment where he and Hill lived. The defendant reported that he was not at the apartment, but Hill had informed him by text message that the upstairs neighbor was in the apartment and was going to rape her. The defendant said that Hill did not have a telephone and was communicating using a text messaging application. Police arrived at the apartment and spoke with Hill, who denied any problems, and so police left.

A little more than one hour later, at 12:41 A.M., Hill telephoned 911 and asked for police and an ambulance, reporting that a neighbor, the victim, had been trying to rape her when her boyfriend hit him on the head with something. Officer James Parker responded to the apartment building, where the defendant and Hill were outside waving him down. Officer Parker separated them and spoke to the defendant, who asked if he could tell his side of the story. In a narrative, the defendant reported that earlier he had been elsewhere in Brockton when he received a text message from Hill stating that the victim was in their apartment and was going to try to rape her. The defendant told Officer Parker that he called 911, took a cab home, found a shovel in the hallway, and went into the apartment. There, he

2

found the victim on top of Hill grabbing at her breasts, so he hit the victim twice on the head with the shovel. The defendant said that he and Hill went outside and telephoned 911; while the defendant spoke, he displayed to Officer Parker text messages on his cell phone.

After learning that the victim was not likely to survive, Sergeant Kevin Amaral asked if the defendant wanted to speak to State police at the police station. The defendant agreed and was transported there. Soon after his arrival, police seized the defendant's cell phone.

Hill also went to the police station, where she told police that earlier that day she had been communicating with the defendant using an application on the laptop computer in the apartment and had sent him electronic messages saying that the victim was making sexual overtures to her. Hill described the laptop, said it was in the living room, and told police the passwords to the laptop and to her America Online (AOL) instant messenger account. At 3:15 A.M., Hill signed a consent form authorizing police to search the laptop.

Beginning shortly before 5 A.M., police interviewed the defendant. At 5:49 A.M., the defendant signed a consent form authorizing police to search his cell phone for "all retrievable data."

3

At 7:39 A.M., police obtained a search warrant for the apartment which authorized them to seize evidence including "electronic messages" and "computers." That morning, police executed that warrant and seized the laptop. Police later obtained two more search warrants, one to search the defendant's cell phone and another to search the laptop for evidence including "instant messages from America Online (AOL) instant messaging," and "any other data regarding the homicide of [the victim]."

In his motion to suppress, the defendant argued that his statements to Officer Parker outside the apartment building should be suppressed because he was not informed of his Miranda rights. The judge denied the motion, concluding that those statements were not the product of custodial interrogation. As to his cell phone, the defendant argued that police improperly seized it before they obtained the warrant to search it. The judge concluded that police were justified in seizing the cell phone because they had probable cause to believe that it contained evidence of the crime they were investigating, and exigent circumstances existed because data on it could be deleted easily. As to the laptop, the defendant argued that police improperly began the search of the laptop during the execution of the warrant to seize it from the apartment, two days before the warrant to search its contents issued. The

4

judge agreed, but concluded that the search was permissible pursuant to Hill's consent to search the laptop, and she had actual authority to consent.

After a trial before another judge on an indictment charging murder, the jury convicted the defendant of voluntary manslaughter.

Discussion. 1. Motion to suppress statements. Four factors are considered in determining whether a person is in custody: "(1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest." Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001). The last factor has been refined to consider "whether an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce [the person being questioned] to stay." Commonwealth v. Matta, 483 Mass. 357, 362 (2019).

5

Applying the Groome factors, the judge concluded that Officer Parker's conversation with the defendant outside the apartment building was not custodial interrogation.[1]  We agree. The defendant was outside his own apartment building.  See Commonwealth v. Medina, 485 Mass. 296, 302 (2020) (defendant's apartment not coercive setting).  The defendant controlled the contours of the interview.  The judge found that "[t]he defendant was eager to tell his side of the story and went on in narrative form to describe his version of the events of the evening."  The judge also found that though the defendant was "distraught" and "upset and talking fast," he was understandable and did not seem to be under the influence of drugs or alcohol. Asked on cross-examination if he would have allowed the defendant to leave, Officer Parker testified that police did not then have probable cause to believe that the defendant committed any crime, because, as the defendant described it, he was defending Hill from a sexual assault.  Cf. Commonwealth v. Mejia, 461 Mass. 384, 390 (2012) (not custodial interrogation

---

[1] The defendant also moved to suppress his statements during his interview at the police station.  With the exception of his consent to search his cell phone, which we discuss below, the defendant's statements at that interview were not admitted at trial.  Thus we do not reach the defendant's arguments on appeal that all of his statements in the interview should have been suppressed.

where police had probable cause to arrest but did not communicate suspicions to defendant).

2. Motion to suppress data from defendant's cell phone. The defendant argues that the evidence seized from his cell phone should have been suppressed. He contends that the form he signed at 5:49 A.M. consenting to its search by police was "the fruit of the poisonous tree" because he was tired, concerned about Hill, and had been deprived of his cell phone since early that morning, and police did not inform him of his right to a telephone call "forthwith upon his arrival at [the police station]," G. L. c. 276, § 33A.

To seize a cell phone, police must have a "substantial basis" to believe that it contains "'evidence connected to the crime' under investigation." Commonwealth v. White, 475 Mass. 583, 588 (2016), quoting Commonwealth v. Escalera, 462 Mass. 636, 642 (2012). The judge concluded that, after the defendant voluntarily displayed to Officer Parker the text messages on his cell phone, police had probable cause to believe that it contained information relevant to their investigation.[2] See Commonwealth v. Fencher, 95 Mass. App. Ct. 618, 623 (2019) (where defendant told police her cell phone contained "videos of

---

[2] The judge did not specify what crime the police were investigating. We conclude that police had a substantial basis to believe that the phone contained data evidencing both the alleged sexual assault on Hill and the homicide of the victim.

7

me being at the bar" at time of home invasion, police had "substantial basis" to conclude that it contained evidence connected to crime).  Because messages and other data on a cell phone can be easily deleted, police also had exigent circumstances to seize the cell phone.  See Commonwealth v. Cruzado, 480 Mass. 275, 283 (2018).

The judge found that, before searching the defendant's cell phone, police obtained a warrant.  Thus, the defendant's complaint that police seized it prematurely is unavailing.  See Commonwealth v. Arthur, 94 Mass. App. Ct. 161, 165 (2018).  The defendant has not argued, in the Superior Court or on appeal, that the search warrant for his cell phone was lacking.[3]

In those circumstances, the defendant's argument that his consent to search his cell phone was involuntary is unavailing. The police did not rely on his consent when they searched his cell phone.

3.  Motion to suppress data from laptop.  The defendant argues that evidence seized from the laptop should have been suppressed because Hill did not have authority to consent to the

_____

[3] For example, the defendant does not argue that the cell phone search warrant was lacking temporal limits, a requirement made clear in Commonwealth v. Snow, 486 Mass. 582, 594 (2021), nearly four years after this warrant issued.  We note that the supporting affidavit contained a handwritten annotation initialed by the affiant which imposed temporal limits on the search "from December 21, 2016 through and including February 21, 2017."

8

police search of the laptop, police improperly began searching the laptop before obtaining the warrant to search its contents, and the warrant lacked particularity because it did not impose temporal limits on the search.

The judge concluded that Hill voluntarily consented to the search of the laptop. From evidence that Hill had frequent use of the laptop and knew its password, the judge concluded that Hill had common authority to consent to the search. See Commonwealth v. Porter P., 456 Mass. 254, 265 (2010) (under art. 14, person has actual authority to consent to warrantless search of home if coinhabitant "with a shared right of access"). See also Commonwealth v. Hernandez, 93 Mass. App. Ct. 172, 175-177 (2018) (coinhabitant could consent to search of suitcase in closet). Where coinhabitants share access to a computer, those same principles apply. Cf. Commonwealth v. Hinds, 437 Mass. 54, 57-58 (2002), cert. denied, 537 U.S. 1205 (2003) (declining to reach question whether brother's consent to search computer connected to network extended to defendant's unsecured files on network, where defendant also consented to search).

The judge found that Hill consented to the search of the laptop "at least several hours" before police began searching it. In those circumstances, we decline to reach the defendant's arguments that during the execution of the search warrant on the apartment, police prematurely began searching the laptop before

9

they had the second search warrant authorizing them to search the laptop's contents.  For example, we need not consider the question whether the search warrant for the apartment authorizing police to seize "electronic messages" and "computers" permitted them to search the contents of the laptop.  Cf. Commonwealth v. Fernandes, 485 Mass. 172, 183-184 (2020) (during execution of search warrant for forensic evidence at murder scene, police opened digital camera and found images of victim dying).

Nor do we reach the defendant's argument, raised for the first time on appeal, that the search warrant for the contents of the laptop lacked particularity because it did not impose temporal limits on the search.  "We are not obliged to address this issue because it was not raised during the suppression hearing or at trial and it requires resolution of factual questions which are not open to us."  Commonwealth v. Barnes, 399 Mass. 385, 393-394 (1987).  Because the defendant did not raise this claim in his motion to suppress, the judge did not have the opportunity to consider whether the requirement that search warrants for cell phones contain temporal limits, see Commonwealth v. Snow, 486 Mass. 582, 594 (2021), should apply to a search warrant for a laptop.  Nor did the judge hear evidence as to whether, when police executed the search warrant for the contents of the laptop, they had in their possession its

10

supporting affidavit, which stated that police were seeking permission to search for "data that occurred on February 20th to February 21st 2017."[4]  See Commonwealth v. Valerio, 449 Mass. 562, 567-568 (2007) (attached affidavit cured particularity deficiency in search warrant).  Because the defendant did not raise those issues in his motion to suppress, we will not consider them for the first time on appeal.[5]  See Commonwealth v. Delossantos, 492 Mass. 242, 248-249 (2023).

Judgment affirmed.

By the Court (Neyman, Grant & Hershfang, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  August 16, 2023.

---

[4] We note that the search warrant for the laptop was issued the day after the search warrant for the defendant's cell phone, see n.3, supra, by the same assistant clerk-magistrate and to the same affiant.

[5] Relying on Commonwealth v. Dorelas, 473 Mass. 496, 502 (2016), the defendant also argues that the laptop search warrant lacked particularity because it did not specify in which files the evidence sought would be found.  More recently, the Supreme Judicial Court has held that "where the location of evidence on a cell phone is unknowable to law enforcement, the Dorelas requirement that officers identify file types to be searched in the warrant is impractical."  Commonwealth v. Henley, 488 Mass. 95, 120 (2021).

[6] The panelists are listed in order of seniority.