NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11670

COMMONWEALTH  vs.  MARIO CRUZADO.


Suffolk.     May 11, 2018. - August 10, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Cypher, JJ.


Homicide.  Evidence, Videotape, Admissions and confessions,
    Inflammatory evidence, Motive, Hearsay, Cross-examination.
    Practice, Criminal, Capital case, Admissions and
    confessions, Hearsay, Assistance of counsel.
    Constitutional Law, Assistance of counsel, Search and
    seizure, Probable cause.  Search and Seizure, Probable
    cause, Exigent circumstances.



Indictment found and returned in the Superior Court
Department on June 24, 2011.

The case was tried before Linda E. Giles, J., and a motion
for a new trial, filed on July 1, 2016, was considered by her.


Ruth Greenberg for the defendant.
Colby M. Tilley, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  On November 26, 2010, the day after Thanksgiving,

Frederick Allen, III, was found dead in his home.  The

defendant, Mario Cruzado, was convicted of murder in the first

degree in connection with the killing. In this consolidated appeal from the judgment of conviction and from the denial of his motion for a new trial, the defendant argues that errors committed by his counsel and by the judge require a reversal of his conviction. Upon review, we affirm and decline to reduce or set aside his conviction under G. L. c. 278, § 33E.

Background. We summarize the facts the jury could have found, reserving certain details for discussions of the issues.

On the day before Thanksgiving in 2010, the victim's boy friend, Jaime Hernandez, encountered the defendant, a former acquaintance, and brought him to the victim's apartment in Chelsea. The three spent time drinking; later that morning, Hernandez left the defendant at a bus stop. When Hernandez returned to the victim's apartment, he argued with the victim over the whereabouts of the victim's cellular telephone (cell phone). As a result, Hernandez left the apartment and did not return. Two days later, the victim's body was discovered. An autopsy revealed that the cause of death was strangulation and blunt force trauma to his head.

Eleven days later, Hernandez reported to police that he had twice encountered the defendant, and that each time the defendant had made incriminating statements about the victim's death. During the first encounter, Hernandez reported that when Hernandez refused to give the defendant a cigarette, the

defendant threatened to choke Hernandez like he had choked the victim.  The second incident occurred the next day, when Hernandez overheard the defendant, who was in an apartment building speaking on a cell phone.  In a blend of Spanish and English, the defendant used the word "belt" and "mentioned . . . ha[ving] his arm around somebody's neck."

Hilda Matiaz, the defendant's former girl friend, told investigators that the defendant telephoned her and told her the following.  The defendant visited an African-American man's apartment in Chelsea.  The defendant showered, fell asleep, and woke to the man touching the defendant's testicles.  The defendant fought the man and said he was "not a fag[g]ot."  The defendant put the man in a headlock, and the man fell to the floor.  The defendant then put on his clothes and left the apartment.

Discussion.  The defendant contends that several errors require reversal.  First, he challenges the trial judge's admission of portions of a video recording of an interview between police and the defendant.  Second, he claims it was error for the judge to allow Hernandez to testify regarding the argument that Hernandez had with the victim.  Third, he contends that he was improperly precluded from questioning Matiaz about whether she was a drug dealer.  Fourth, he appeals from the denial of his motion for a new trial on the ground that his

counsel was constitutionally ineffective for failing to file a motion to suppress. Finally, he asks this court to reverse his conviction or reduce his verdict pursuant to G. L. c. 278, § 33E, on the ground that the Commonwealth presented no physical evidence of his guilt. We address each claim in turn.

1. Defendant's recorded police interview. The defendant argues that portions of a recorded police interview were admitted in error. In portions of the video recording played for the jury, State police troopers asked the defendant whether he knew the victim. When asked whether the defendant knew the victim by either of his nicknames, the defendant responded, "No." Later, after the police showed a photograph of the victim to the defendant, the defendant and the troopers had the following exchange:

Q.: "I'm going to show you a picture of a guy. See if you've ever seen this guy before."

A.: "Who's that?"

Q.: "I'm asking you. Isn't this -- I'm asking you. Have you ever seen this guy before? Yes or no?"

A.: "Who the fuck is that? Just a guy?"

Q.: "No, listen to me. Listen to me. Have you ever seen this guy before? Yes or no?"

A.: "He looks like a nigger to me."

Q.: "Have you ever seen this guy before?"

A.: "He looks like a nigger to me."

Q.: "Have you ever seen this guy right here before?"

A.: "He looks like a nigger to me.  No.  He's black."

Q.: "No.  It's a yes or no question."

A.: "He's black."

. . .

Q.: "Yes or no?"

A.: "Where the fuck I've ever seen him?  I don't know that mother fucker."

Although an opposing party's statements are generally admissible against him or her, see Commonwealth v. Spencer, 465 Mass. 32, 46 (2013); Mass. G. Evid. § 801(d)(2)(A) (2018), the defendant contends that admission of these portions of the videotaped interview was error.  We disagree.

a.  Defendant's denials.  "It is well established . . . that if the extrajudicial statement by a criminal defendant is an unequivocal denial of an accusation, it, and the accusation it denies, are inadmissible."  Spencer, 465 Mass. at 46.  The defendant argues that, for this reason, portions of the video recording in which he denied knowing the victim were inadmissible.

However, the questions regarding the defendant's familiarity with the victim were not accusations of guilt; that is, the question whether the defendant knew the victim was not directly tied to the defendant's culpability.  Compare

Commonwealth v. Womack, 457 Mass. 268, 272 (2010) (defendant's responses to assertions that defendant committed crime improperly admitted at trial). Because the questions investigators posed regarding whether he recognized or knew the victim did not accuse him of criminal activity, the defendant's statements denying that he knew the victim were properly admitted.

b. Evidence of racial animus. The defendant also challenges the admission of portions of the interview in which he refers to the victim as "a nigger," arguing that the reference was irrelevant and unduly prejudicial. Again, we discern no error.

Although the prosecution is not permitted to introduce evidence of a defendant's bad character to show his or her "propensity to commit the crime charged, . . . such evidence may be admissible if relevant for some other purpose," including motive. Commonwealth v. Howard, 469 Mass. 721, 738 (2014), quoting Commonwealth v. Helfant, 398 Mass. 214, 224 (1986).

The defendant was accused of killing a gay African-American man. The Commonwealth offered the evidence to show the defendant's animus toward African-Americans, and thus as a partial motive for the killing. See Commonwealth v. Bishop, 461 Mass. 586, 596-597 (2012) (statement suggesting racial animus properly admitted to show motive). See also Commonwealth v.

Carlson, 448 Mass. 501, 508-509 (2007) (although motive is not essential element of murder in first degree, evidence of motive may be relevant to malice or intent). Concluding that "the Commonwealth is entitled to elicit the fact that [the defendant] could have been enraged, not just because he was allegedly touched by this gay man, but he was allegedly touched by an African-American man," the judge did not abuse her discretion in determining that the probative value of the evidence outweighed its prejudicial effect. See Spencer, 465 Mass. at 52 (weighing of prejudice and probative value left to discretion of trial judge).

To mitigate the prejudicial effect of the racial slur, moreover, the judge conducted an individual voir dire of potential jurors to eliminate potential bias.[1] See Commonwealth v. Alleyne, 474 Mass. 771, 780 (2016) (discussing use of voir dire to mitigate prejudice); Commonwealth v. De La Cruz, 405 Mass. 269, 274 (1989) ("when requested, we encourage individual voir dire as to possible juror prejudice based on ethnic considerations"). Although the judge did not provide a limiting instruction, the defendant did not request one. "[T]here is no

---

[1] The judge inquired of each prospective juror: "The defendant is Hispanic; the alleged victim was African-American. You'll also hear evidence that the defendant allegedly referred to the alleged victim as a nigger. Do you have any feelings, based on race, that might affect your ability to be fair and impartial?"

requirement that the judge give limiting instructions sua sponte." Commonwealth v. Sullivan, 436 Mass. 799, 809 (2002). "Nor does the lack of a limiting instruction necessarily create a substantial likelihood of a miscarriage of justice." Id. See Bishop, 461 Mass. at 596-597 (no abuse of discretion despite lack of limiting instruction on use of word "nigger").[2,3]

2. Admission of argument between Hernandez and victim. The Commonwealth elicited testimony from Hernandez regarding an argument Hernandez had with the victim over the whereabouts of the victim's cell phone after the defendant left. Hernandez testified that when he denied having stolen the cell phone, the victim concluded that the defendant had stolen it. Hernandez further testified that, after the argument, Hernandez left the victim's apartment and did not return. The defendant claimed at trial, and again on appeal, that the testimony, which supported Hernandez's alibi, was hearsay. We disagree.

An out-of-court statement not offered for its truth is not hearsay. See Commonwealth v. Jenkins, 458 Mass. 791, 793

---

[2] The defendant's argument that the admission of the word "nigger" as evidence of racial animus violated his due process rights is unavailing, as the word came from his own mouth several times.

[3] Because the evidence was properly admitted, it was also proper for the prosecutor to comment on it in closing argument. Prosecutors may argue "based on the evidence and on inferences that may reasonably be drawn from the evidence." Commonwealth v. Kozec, 399 Mass. 514, 516 (1987).

(2011); Commonwealth v. Silanskas, 433 Mass. 678, 693 (2001). Hernandez's testimony about the argument was not offered to prove that the defendant stole the victim's cell phone but, rather, to show that Hernandez and the victim argued, that Hernandez subsequently left, and why he did not return. See Commonwealth v. Perkins, 450 Mass. 834, 844 (2008). See also Commonwealth v. Keown, 478 Mass. 232, 246 (2017), cert. denied, 138 S. Ct. 1038 (2018); Commonwealth v. Brown, 474 Mass. 576, 587 (2016). To ensure that the jury did not use Hernandez's statements to prove the truth of what they asserted, the judge instructed the jury on the matter. See Commonwealth v. Santana, 477 Mass. 610, 622 (2017). She told the jury that the Commonwealth was not alleging that the defendant stole the cell phone in question, and that they should not consider it for that purpose. There was no error. See id.

3. Matiaz's cross-examination. Although the defendant claimed that he did not know the victim and that he had never been to the victim's home, the Commonwealth presented evidence that, on November 24, 2010, five calls were made from the victim's landline telephone to Matiaz, who was known to the defendant but not to the victim.[4] In an attempt to advance the

---

[4] The telephone calls were made between 5:57 P.M. and 6:44 P.M., providing strong circumstantial evidence that the defendant returned to the victim's apartment on the evening of the victim's death, after Hernandez had left for the last time.

theory that it was in fact the victim who called Matiaz because he was seeking illegal drugs, defense counsel sought to question Matiaz regarding whether she was a drug dealer. The trial judge disallowed that line of questioning. The defendant claims on appeal that he was improperly precluded from advancing a viable defense. The judge did not err.

A defendant has a right to cross-examine witnesses who testify against him or her, but that right has limits. Commonwealth v. Johnson, 431 Mass. 535, 540 (2000). Those limits include the requirement that the questions have a legitimate basis in evidence. Id. See Mass. R. Prof. C. 3.4 (e) (1), as appearing in 471 Mass. 1425 (2015) ("A lawyer shall not . . . state or allude to any matter that the lawyer does not reasonably believe . . . will not be supported by admissible evidence . . ."). Accord Commonwealth v. Hart, 455 Mass. 230, 240 (2009). The judge did not abuse her discretion by disallowing any reference to the defense's theory that Matiaz was a drug dealer on the grounds that it was speculative and without evidentiary support. The defendant made no proffer that there was any relationship between Matiaz and the victim. Further, the only support for the defense theory that Matiaz was a cocaine dealer was that she had been arrested for possessing heroin three years prior to the killing. There is no logical connection between a 2007 arrest for possession of heroin and

the defense theory that, years later, Matiaz was known to the victim as a cocaine dealer.  There was no error.[5]

4.  <u>Ineffective assistance of counsel</u>.  Thirteen days after the killing, Hernandez informed police of incriminating statements that the defendant made while speaking to a person later identified as Matiaz.  Hernandez directed police to a nearby apartment building, where they found the defendant asleep on a landing; a cell phone was on the floor approximately one foot away from him.  During questioning at the station, the defendant claimed that a "crack head" had given the cell phone to him to use a day prior, but that he did not know the owner's name or the telephone number.  When confronted with the cell phone, although he twice claimed it was not his, he also said that the "dude" left it, responding "no" when police asked whether the defendant was supposed to return the cell phone.  Ten days later, police sought and received a warrant to search the cell phone, which led police to contact Matiaz.

The defendant now claims that his trial counsel was ineffective for failing to move to suppress the cell phone and

---

[5] The defendant's related claim that it was a violation of due process for the prosecutor to exploit the absence of evidence that was excluded at her request is also unavailing. The line of questioning prohibited was that Matiaz was a drug dealer.  The prosecutor argued only that Matiaz knew neither the victim nor Hernandez; she did not address the question whether Matiaz was a drug dealer.  The argument was proper.

its contents.[6]  In cases of murder in the first degree, in order to prevail on a claim of ineffective assistance of counsel due to a failure to move to suppress evidence, the defendant must demonstrate both that the motion would have been successful and that counsel's failure to make the motion created a substantial likelihood of a miscarriage of justice.  Commonwealth v. Williams, 453 Mass. 203, 207 (2009), citing Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014).  The defendant contends that police seized the cell phone without probable cause and waited an unreasonable amount of time before applying for and obtaining a warrant to search its contents, and that thus a motion to suppress would have been successful.  We disagree.

First, we note that, although the cell phone did not belong to the defendant, he had a possessory interest in it; thus, he would have had standing to contest its seizure.[7]  See Commonwealth v. Fulgiam, 477 Mass. 20, 35-36, cert. denied, 138 S. Ct. 330 (2017) (possessory interest established standing to

---

[6] The defendant unsuccessfully made the same claim in a motion for a new trial.

[7] The defendant claims, incorrectly, that the charges against him grant him automatic standing.  Our case law provides for automatic standing from criminal charges where possession of the thing seized is an essential element of the crime charged.  Commonwealth v. Montanez, 410 Mass. 290, 301 (1991).  Possession is not an element of murder in the first degree.  See Commonwealth v. Lodge, 431 Mass. 461, 474 (2000).

challenge search of cell phone even though defendant did not own cell phone searched).  Indeed, a critical part of the Commonwealth's theory of the case was that the cell phone was the defendant's.  See id. at 36.  However, although the defendant had standing to challenge the seizure of the cell phone, any such challenge would have failed, as police had probable cause to seize the cell phone and exigent circumstances existed to do so without a warrant.  See Commonwealth v. White, 475 Mass. 583, 588 (2016).

When the police encountered the defendant sleeping in the stairwell with the cell phone on the floor near his head, they had information that the defendant and victim had been together on the day of the murder, and also that Hernandez had recently overheard the defendant confessing to the murder to an unidentified person on a cell phone.  This provided ample probable cause to believe that the cell phone located near the defendant would contain evidence of the crime.  See Commonwealth v. Kaupp, 453 Mass. 102, 105-106 (2009).

Further, exigent circumstances supported the warrantless seizure:  the risk of someone taking or tampering with the cell phone.  Left unattended, especially in an area to which many people had access, the cell phone would have been at risk of "theft or vandalism."  See Commonwealth v. Daley, 423 Mass. 747, 750 (1996) (discussing impoundment of vehicles).  "With probable

cause, the police may seize property 'to prevent destruction or removal of evidence'" before obtaining a search warrant. Commonwealth v. Gentile, 437 Mass. 569, 573 (2002), quoting Commonwealth v. Taylor, 426 Mass. 189, 195 (1997).  See Riley v. California, 134 S. Ct. 2473, 2486 (2014) (discussing risk of data being deleted from cell phone); Kaupp, 453 Mass. at 106.

Given the defendant's possessory interest in the cell phone, we next consider the reasonableness of the ten-day delay from the police's seizure of the cell phone to their application for a warrant to search it.[8]

Although police are permitted to hold a seized item for "the relatively short period of time needed . . . to obtain a search warrant," they must "release the item if a warrant is not obtained within that period."  White, 475 Mass. at 593, quoting Gentile, 437 Mass. at 573.  We have said that there is no bright-line rule that demarcates when a delay is unreasonable. White, supra.  Instead, we analyze each case by its own facts, "balanc[ing] the nature and quality of the intrusion on the individual's [interests under the Fourth Amendment to the United States Constitution] against the importance of the government interests alleged to justify the intrusion."  Id. at 593-594, quoting United States v. Place, 462 U.S. 696, 703 (1983).

_____

[8] Contrary to the Commonwealth's argument, it is not at all clear that the defendant intended to abandon the cell phone at the police station.

Here, the defendant's minimal possessory interest was far outweighed by the government's interest in obtaining evidence regarding a recent murder.[9]  Although the defendant claimed to be using the cell phone, he admitted that he had only had it for a day.  Moreover, he was unaware of the identity of its actual owner, or even of its number, and he repeatedly told police that the cell phone was not his.  Critically, police likely would not have been able to return the cell phone to the defendant even if he had requested it:  they would not have been able to ascertain that the cell phone belonged to the defendant, as he stated that he had received it from a male "crack head" and the cell phone had the name "Vanessa" displayed on it.[10]  Whatever possessory interest the defendant had in the cell phone was thus extremely weak, in contrast to that in White, upon which the defendant primarily relies.  In that case, the defendant was the actual owner of the cell phone seized.  White, 475 Mass. at 595 n.15.

---

[9] We have said that whether police acted diligently in applying for the warrant is a factor that may be relevant.  See Commonwealth v. White, 475 Mass. 583, 594 (2016).  However, we have never said that it is a dispositive factor.  Here, the record is silent as to police work on applying for the warrant in the ten days in question.

[10] The cell phone was later determined to belong to a woman named "Vanessa," who had lost it.  Indeed, the Commonwealth initially charged the defendant with receiving stolen property, dismissing the charge only when the defendant stipulated that the cell phone belonged to someone else.

The Commonwealth's interest in the cell phone, by contrast, was strong:  police had probable cause to believe that evidence critical to a recent murder was present on the cell phone, as discussed supra.  There can be no doubt that there is a "strong government interest in solving crimes and bringing offenders to justice."  United States v. Hensley, 469 U.S. 221, 229 (1985).  This interest is particularly strong "in the context of felonies or crimes involving a threat to public safety," such as murder.  Id.  Judged against the defendant's minimal possessory interest, the governmental interests justified a ten-day delay.  See Kaupp, 453 Mass. at 106-107 (nine-day delay reasonable in investigation of child pornography).  A motion to suppress the cell phone and its contents would have been unavailing; thus, the defendant's ineffective assistance claim fails.

5.  Review under G. L. c. 278, § 33E.  The defendant asks us to exercise our extraordinary power to set aside or reduce his verdict under G. L. c. 278, § 33E.[11]  His main argument is that it is "close to impossible" for the defendant to have spent so much time in the victim's apartment and yet "left not one

_____

[11] In response to a request by this court, the parties provided further briefing on the question whether defense counsel was ineffective for failing to request an instruction on provocation.  In Commonwealth v. Pierce, 419 Mass. 28 (1994), we rejected a provocation instruction on facts nearly indistinguishable from these.  Although the victim touching the defendant's testicles was offensive, "it was not the type of behavior that would provoke a reasonable person into a homicidal response."  Id. at 32.

trace."  This is not a compelling reason to grant relief under § 33E.  Defense counsel vigorously cross-examined witnesses regarding the lack of physical evidence, and focused on it in closing argument.  The Commonwealth, by contrast, presented testimonial and documentary evidence that, although circumstantial, was found to be sufficient to convict the defendant.  See Commonwealth v. Gonzalez, 475 Mass. 396, 407 (2016) (circumstantial evidence alone may be sufficient to convict).  "We do not sit as a second jury to pass anew on the question of the defendant's guilt."  Commonwealth v. Watkins, 373 Mass. 849, 853 (1977).  See Commonwealth v. Wood, 469 Mass. 266, 269 (2014) (declining to grant relief under G. L. c. 278, § 33E, despite "lack of forensic evidence tying either [defendant] to the crime scene"); Commonwealth v. Williams, 450 Mass. 645, 656 (2008) ("The lack of forensic evidence . . . was argued to the jury . . . and was for them to consider").

Judgment affirmed.

Order denying motion for a
new trial affirmed.