APPEALS COURT 
 
 COMMONWEALTH vs. MICHAEL DIAZ

 
 Docket:
 23-P-1462
 
 
 Dates:
 October 1, 2024 – August 29, 2025
 
 
 Present:
 Neyman, Singh, & Toone, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Child Abuse. Obscenity, Child pornography. Cellular Telephone. Search and Seizure, Warrant, Arrest. Personal Property, Property seized at time of arrest. Practice, Criminal, Motion to suppress, Warrant, Property seized at time of arrest.
 
 

       Indictments found and returned in the
Superior Court Department on December 19, 2019. 
      A pretrial motion to suppress evidence was
heard by Sarah Weyland Ellis, J.
      An application for leave to prosecute an
interlocutory appeal was allowed by David A. Lowy, J., in the Supreme Judicial
Court for the county of Suffolk and the case was reported by him to the Appeals
Court.
      Cailin M. Campbell, Assistant District
Attorney, for the Commonwealth.
      George F. Ohlson, Jr., for the defendant.
      NEYMAN, J. 
The Commonwealth appeals from a Superior Court judge's order allowing
the defendant's motion to suppress evidence obtained from a search of the defendant's
cellular telephone (cell phone).  This
case requires us to consider whether the judge committed an error of law in
concluding that a 123-day delay between the seizure of that cell phone pursuant
to a lawful search incident to arrest, and the application for a warrant to
search the contents of that cell phone, was not reasonable under the Fourth
Amendment to the United States Constitution and art. 14 of the Massachusetts
Declaration of Rights.  Despite the critical
governmental interests justifying the delayed search of the cell phone in the
present case, Massachusetts precedent compels us to affirm the judge's order. 
      Background.[1]  1. 
Facts regarding sexual abuse.  On
June 29, 2019, twelve year old Amanda[2] disclosed to her biological mother
that she had been sexually abused by the defendant, her foster father.  Amanda also told her mother that she had seen
the defendant sexually abuse Betty,[3] her eleven year old foster sister.  Sergeant Detective Anthony D'Alba (Sergeant
D'Alba),[4] the supervisor of the sexual assault and child abuse unit of the
Chelsea police department, was assigned to investigate the case.  On July 16, 2019, at a forensic interview
attended by Sergeant D'Alba, Amanda disclosed as follows.  Between the summer of 2018 and March of 2019,
while she was living with her foster parents, the defendant raped her vaginally
with his penis and fingers, and touched her breasts, vagina, and buttocks.  These crimes occurred "daily" in
the foster home and in the defendant's vehicle. 
The defendant also photographed Amanda with his cell phone and requested
that she photograph herself and send the pictures to him via text message.[5]  Amanda also believed that the defendant had
similarly abused Betty, as she had seen Betty "come out of a room with a closed
door with the [d]efendant, and [Betty] had told [Amanda] that her vagina
hurt."  The defendant instructed
both girls "to keep everything a secret."
      On July 18, 2019, Betty participated in a
forensic interview likewise attended by Sergeant D'Alba.  Betty disclosed that while she lived in the
foster home, "which was between the Fall of 2017 and March 2019," the
defendant raped her "by penetrating her vagina and mouth with his
penis," touched her breasts and vagina, and "kissed her on the mouth
with his tongue."  In addition, the
defendant used his cell phone to show Betty a photograph of himself and his
wife engaging in oral sex.  Betty also
saw the defendant "repeatedly bringing [Amanda] into rooms alone,
showering with [Amanda] in the dark, and kissing [Amanda] on the lips."
      On July 18, 2019, Sergeant D'Alba applied
for and received an arrest warrant for the defendant.  That same day, Sergeant D'Alba contacted the
defendant using a phone number that one of the girls had identified as belonging
to him.  The defendant answered the call
and agreed to meet at a public location, where Sergeant D'Alba arrested the
defendant pursuant to the warrant.  At
that time, the defendant was carrying "an iPhone 6S in a black and copper
case, with an emblem for the U.S. Army." 
The police seized the defendant's cell phone at the time of arrest and
placed it in "secure evidence storage" at the Chelsea Police
Department.
      On August 1, 2019, Sergeant D'Alba learned
that Betty had disclosed that her foster mother, the defendant's wife, had also
sexually assaulted her.  On August 15,
2019, during a second forensic interview, Betty again disclosed that the
defendant had shown her a picture on his cell phone of him and his wife
engaging in oral sex.  Betty also
reported an incident where "the [d]efendant had used the flashlight on his
[cell] phone to take a picture of [Betty] with her shirt lifted."
      2. 
Search warrant application and execution.  Sergeant D'Alba drafted a search warrant
application, supported by his comprehensive twenty-seven page affidavit,
seeking permission to search the contents of the cell phone seized at the time
of the defendant's arrest.  As noted in
the judge's decision and order on the motion to suppress:
"Sergeant
D'Alba spent time during 4-5 shifts, each 8 hours in duration, working on the
search warrant application.  Sergeant
D'Alba had difficulty finding time to work on the search warrant application
because of his many duties, his serious caseload, and his responsibilities
responding to emergency situations. 
Sergeant D'Alba maintains an average of 80 open sexual assault
investigations, including child abuse cases. 
Sergeant D'Alba regularly participates in sexual assault forensic
interviews and engages in witness preparation for trial.  Working the night shift as a supervisor,
Sergeant D'Alba also responds as needed to shootings and unattended
deaths.  Due to these obligations,
Sergeant D'Alba placed the search warrant application in this case, 'on the
back burner.'"
On November 18,
2019, Sergeant D'Alba applied for and received a warrant to search the contents
of the cell phone, which had been stored at the Chelsea Police Department since
the defendant's arrest on July 18, 2019. 
During the 123 days between the seizure[6] of the defendant's cell phone
and the obtaining of the search warrant, the defendant did not contact Sergeant
D'Alba or the Chelsea Police Department seeking return of the cell phone.  Further, Sergeant D'Alba had conversations
with the "prosecutor" wherein he "learned that the prosecutor
intended to use the [cell phone] as a piece of physical evidence at trial,
regardless of whether a search warrant was executed on the [cell phone]."
      The search warrant was executed on or
around November 19, 2019.  Pursuant to
the search, photographs were recovered from the cell phone showing Amanda
partially undressed, photographs of the defendant and his wife engaged in oral
sex, "and a photograph of a very young looking, unidentified child with a
penis penetrating the child's mouth." 
The search also revealed a photograph of Betty "with her chest and
vagina exposed" and another photograph showing "[Betty's] vagina
exposed."[7]
      3. 
Procedural background.  On
December 19, 2019, the defendant was indicted on four counts of rape of a child
aggravated by a ten-year age difference, six counts of indecent assault and
battery on a child under fourteen, dissemination of visual material depicting a
child in a state of nudity or engaged in sexual conduct, posing a child in a
state of nudity or suggesting sexual conduct, and possession of child
pornography.  On October 12, 2022, the
defendant filed a motion to suppress the evidence obtained from the search of
the cell phone.  The judge held an
evidentiary hearing at which Sergeant D'Alba testified and recordings of the
children's forensic interviews were introduced in evidence.
      4. 
Judge's ruling.  On October 17,
2023, the judge issued a detailed and thoughtful memorandum and order in which
she allowed the motion to suppress.  The
judge balanced the "nature and quality of the intrusion on the
[defendant's] Fourth Amendment interests against the importance of the
governmental interests alleged to justify the intrusion" (citation
omitted).  Commonwealth v. White, 475
Mass. 583, 593-594 (2016).  Regarding the
Commonwealth's interests, the judge ruled, in relevant part, that:
"there is no
doubt the Commonwealth's interest in the [cell phone] was strong.  The police had probable cause to believe that
evidence pertaining to numerous rapes of two children and dissemination of
matter harmful to children would be found on the device.  The [d]efendant's status as a foster parent,
the number of children living in his home at the time of the allegations, and
the egregious nature of the allegations were all factors creating a strong
government interest in bringing the offender to justice" (footnote
omitted).
The judge further
ruled, however, that the defendant also "had a significant privacy and
possessory interest in his [cell phone]," and that "[n]otably, the
[d]efendant was using it at the time of his arrest, speaking with Sergeant
D'Alba to coordinate their meeting." 
Citing White, supra at 594-595, the judge rejected the Commonwealth's
argument that the defendant's failure to request the return of the cell phone
during the four months between the seizure and search negated any possessory
interest in that item.  The judge also
distinguished Commonwealth v. Arthur, 94 Mass. App. Ct. 161, 165-166 (2018),
and rejected the Commonwealth's reliance on that authority.  Finally, citing again to White, supra at 594,
the judge ruled that although Sergeant D'Alba "was diligent about his
responsibilities and his caseload" and there was evidence supporting some
of the delay, the "evidence does not account for four months of delay,"
and "[t]here is no legal precedent for finding a delay of 123 days to be
reasonable, even with a compelling governmental interest."  The judge thus concluded that the
Commonwealth failed to meet its "burden to show that the delay of 123 days
from the time the device was seized to the date of search warrant application
was reasonable," and allowed the motion to suppress.  The Commonwealth filed a timely notice of
appeal and application for interlocutory review, which was allowed by a single
justice of the Supreme Judicial Court.
      Discussion.  The present case centers on the application
of White, 475 Mass. at 593-594.  Although
material distinctions between White and this case exist, under existing precedent,
we cannot say that the judge erred in her analysis.
      1. 
Standard of review.  "In
reviewing a decision on a motion to suppress, we accept the judge's subsidiary
findings of fact absent clear error but conduct an independent review of [the]
ultimate findings and conclusions of law" (citation omitted).  Commonwealth v. Carrasquillo, 489 Mass. 107,
116-117 (2022).  As to conclusions of
law, we "make an independent determination of the correctness of the
judge's application of constitutional principles to the facts as found"
(citation omitted).  Id. at 117.
      2. 
Seizure of cell phone.  There is
no dispute that the defendant was taken into custody pursuant to a lawful
arrest warrant and that a cell phone was taken from his person as a lawful
seizure incident to arrest, predicated on probable cause to believe that a cell
phone belonging to the defendant would contain evidence of crimes.  As the judge found, Sergeant D'Alba had
information that the defendant had used his cell phone to communicate with
Amanda, request and receive photographs from Amanda, arrange meetings to
sexually assault Amanda, and show "self-made pornographic material"
to Betty.  This information established
probable cause to believe that the cell phone would contain evidence connected
to the crimes under investigation.  See
Commonwealth v. Barillas, 484 Mass. 250, 254 (2020) ("if a police officer
has reason to believe that a cell phone found on an arrestee might contain
evidence of the crime of arrest, the officer may seize that cell phone and
secure it until a valid search warrant is obtained"); White, 475 Mass. at
588 (seizure justified where police have substantial basis for concluding that
item seized contains evidence connected to crime under investigation).
      3. 
Delay obtaining search warrant. 
"Police may retain an item seized without a warrant for 'the
relatively short period of time needed . . . to obtain a search
warrant,' but must release the item if a warrant is not obtained within that
period."  White, 475 Mass. at 593,
quoting Commonwealth v. Gentile, 437 Mass. 569, 573 (2002).  If the police fail to obtain a search warrant
within a reasonable time, the seizure, even if "reasonable at its
inception because based upon probable cause, may become unreasonable as a
result of its duration."  White,
supra, quoting Segura v. United States, 468 U.S. 796, 812 (1984).  See White, supra, quoting United States v.
Burgard, 675 F.3d 1029, 1032 (7th Cir.), cert. denied, 568 U.S. 852 (2012)
("When officers fail to seek a search warrant, at some point the delay
becomes unreasonable and is actionable under the Fourth Amendment").  
      There is no bright-line rule delineating
when a delay in seeking a warrant becomes unreasonable.  See White, 475 Mass. at 593, citing Burgard,
675 F.3d at 1033.  Rather, "we
analyze each case on its own facts, 'balanc[ing] the nature and quality of the
intrusion on the individual's [interests under the Fourth Amendment to the
United States Constitution] against the importance of the government interests
alleged to justify the intrusion.'" 
Commonwealth v. Cruzado, 480 Mass. 275, 283 (2018), quoting White, supra
at 593-594.  In conducting this
evaluation, the Supreme Judicial Court has stated that "whether police
acted diligently in applying for [a] warrant is a factor that may be relevant.
. . .  However, [that court
has] never said that it is a dispositive factor."  Cruzado, supra at 283 n.9.  The Commonwealth bears the burden of
demonstrating that the delay was reasonable. 
White, supra at 594. 
      There is no dispute in the present case
that the Commonwealth was required to obtain a search warrant to search the
contents of the seized cell phone.  See
Riley v. California, 573 U.S. 373, 401 (2014) ("warrant is generally
required before such a search, even when a cell phone is seized incident to
arrest").  The Commonwealth argues,
however, that the judge erred "because the police had no obligation to
diligently obtain a search warrant and the seizure of the defendant's cell []
phone was otherwise reasonable." 
The Commonwealth posits that in White, 475 Mass. at 593, the police had
an obligation to diligently obtain a search warrant because the initial seizure
of the defendant's cell phone did not fall into any exception to the warrant
requirement.  In the present case, by
contrast, the defendant's cell phone was lawfully seized incident to
arrest.  In such circumstances, the
Commonwealth contends, any delay in obtaining a warrant to search the cell
phone is of lesser significance. 
Otherwise stated, the Commonwealth argues that the requirement to
diligently or expeditiously obtain a warrant to search the contents of an
object (here, a cell phone) does not apply, or at least does not apply with the
same force, to objects lawfully seized pursuant to an exception to the warrant
requirement (here, search incident to arrest based on probable cause).
      We agree that the initial seizure in White
was not based on probable cause or any recognized exception to the warrant
requirement.  We further agree that
"the Fourth Amendment will tolerate greater delays after probable-cause
seizures" as opposed to seizures predicated on reasonable suspicion,
Burgard, 675 F.3d at 1033, or generalized suspicion, see White, 475 Mass. at
590-591.  That distinction, however, does
not negate the requirement that law enforcement act without unreasonable delay to
obtain a search warrant.  See id. at
593.  See also United States v. Smith,
967 F.3d 198, 209 (2d Cir. 2020) (existence of probable cause for initial
seizure of tablet "far from dispositive to deciding the reasonableness of
the ensuing delay in seeking a search warrant").  To the contrary, under the Fourth Amendment,
even where there is probable cause to seize an item, courts still evaluate the
reasonableness of a subsequent delay in obtaining a warrant to search that
item.  In Cruzado, 480 Mass. at 282, for
example, the Supreme Judicial Court evaluated the seizure and subsequent search
of a cell phone that contained evidence connected to a homicide.  The court first concluded that the seizure of
the cell phone was lawful "as police had probable cause to seize the cell
phone and exigent circumstances existed to do so without a warrant."  Id. 
The court then applied the White balancing test, "consider[ed] the
reasonableness of the ten-day delay from the police's seizure of the cell phone
to their application for a warrant to search it," and concluded that the
brief delay was not unreasonable.  Id. at
283.  Thus, even where the initial
seizure of evidence was lawful, the court in Cruzado, supra at 283-284,
nonetheless applied the White balancing test; evaluated, among other factors,
whether the police acted diligently; and weighed the nature and quality of the
intrusion against the importance of governmental interests as required by
White.  Similarly, in Burgard, supra at
1031, cited and relied on by the court in White, supra at 593-594, the
defendant conceded that the initial warrantless seizure of his cell phone was
lawful because of exigency and probable cause. 
Nonetheless, the Court of Appeals for the Seventh Circuit did not end
its analysis there, but instead evaluated whether a six-day delay in obtaining
a warrant to search the cell phone was unreasonable taking into account
"whether the police diligently pursue[d] their investigation"
(citation omitted).  Burgard, supra at
1033.[8]  Thus, the Commonwealth's narrow
interpretation of White is unpersuasive, and its first argument is
unavailing.  
      In her thoughtful opinion, our dissenting
colleague contends that where the police seized the cell phone incident to a
lawful arrest, and where there was probable cause to believe the cell phone was
used as an instrumentality of the crimes, the Commonwealth was "authorized
to seize it and keep it as long as necessary for it to be used in the
prosecution of the defendant."  Post
at        . 
We acknowledge that there is commonsense appeal to this argument.  Nonetheless, we are unaware of any precedent
for the proposition that the White reasonableness test and the
"expeditiousness" requirement do not apply when an item has been
seized pursuant to a search incident to arrest as opposed to being seized on a
different lawful basis.  Furthermore,
courts have applied the expeditiousness requirement and balancing test even
where items have been seized incident to lawful arrest.  See, e.g., United States v. Sykes, 65 F.4th
867, 878-879 (6th Cir. 2023), cert. denied, 144 S. Ct. 576 (2024) (applying
balancing test to determine whether delay in obtaining warrant to search cell
phone seized incident to arrest was reasonable); United States v. Bragg, 44
F.4th 1067, 1071-1072 (8th Cir. 2022), cert. denied, 143 S. Ct. 1062 (2023)
(same).  Accordingly, we apply the White
balancing test. 
      The Commonwealth argues, in essence, that
even if the balancing test applies, the judge erred because the Commonwealth's
interest in maintaining the cell phone as evidence of serious crimes far
outweighed the defendant's minimal possessory interest.  The Commonwealth cites to several factors
that weigh in its favor.  First, the
government had a "particularly strong" interest in investigating and
resolving the crimes in this case, including multiple counts of aggravated
statutory rape and sexual assault against multiple child victims, posing a
child in a state of nudity or engaged in sexual conduct, and dissemination of
visual material of a child in a state of nudity or suggesting sexual
conduct.  Cruzado, 480 Mass. at 284.  See id. ("There can be no doubt that
there is a strong government interest in solving crimes and bringing offenders
to justice. . . .  This
interest is particularly strong in the context of felonies or crimes involving
a threat to public safety, such as murder" [quotations and citations
omitted]).  Second, the Commonwealth
lawfully seized the cell phone and had probable cause to believe that it
contained critical evidence of the crimes charged.  See Arthur, 94 Mass. App. Ct. at 165
(distinguishing White and emphasizing "particularized evidence [in this
case] that the cell phones were used in the commission of the crime").  Third, the defendant never sought the return
of the cell phone.  See Burgard, 675 F.3d
at 1033 ("it can be revealing to see whether the person from whom the item
was taken ever asserted a possessory claim to it"); United States v.
Stabile, 633 F.3d 219, 235-236 (3d Cir.), cert. denied, 565 U.S. 942 (2011) (defendant's
failure to seek return of property for eighteen months considered as factor
suggesting lesser possessory interest in item); United States v. Blanchard, 544
F. Supp. 3d 166, 172 (D. Mass. 2021) (defendant had diminished possessory
interest in seized cell phone where she never asked for its return "nor
could she have because she ha[d] been incarcerated ever since the date [of the
seizure]").[9]  Finally, as
discussed supra, Massachusetts courts have not imposed any outer limit or
"bright-line rule that demarcates when a delay [in obtaining a search
warrant] is unreasonable."  Cruzado,
supra at 283, citing White, 475 Mass. at 593. 
Thus, the Commonwealth argues, the length of the delay in the present
case is neither dispositive nor unreasonable.  

      In view of all these circumstances, there
is more than a measure of persuasiveness to the Commonwealth's claim that the
delay in obtaining the search warrant was not unreasonable because the
balancing of interests weighed in the Commonwealth's favor.  Indeed, there is some support for the
Commonwealth's position in Federal case law. 
See, e.g., Sykes, 65 F.4th at 878-879, quoting Segura, 468 U.S. at 813
(forty-two day delay between initial seizure of defendant's cell phone and obtaining
of search warrant not unreasonable because defendant's possessory interest was
"virtually nonexistent" where there was probable cause to believe
cell phone contained child pornography and evidence of sex crimes against
minor, defendant did not seek return of cell phone, and defendant was in
custody); Stabile, 633 F.3d at 236 (three-month delay in obtaining search
warrant reasonable, even though "not unavoidable," in view of lead
officer's assignment to Secret Service detail protecting President and other
high officials, among other factors); Blanchard, 544 F. Supp. 3d at 172
(four-month delay between seizure of cell phone and application for search
warrant not unreasonable, even where law enforcement held cell phone
"longer than was necessary to secure a warrant," in view of diminished
possessory interest and transfer of case from State to Federal
authorities).  But see White, 475 Mass.
at 594-595 (sixty-eight day delay between seizure and date of search warrant
application unreasonable even though cell phone was "pay-as-you-go"
device and defendant did not request its return). 
      On the defendant's side of the ledger,
however, we first note that the defendant had a material possessory interest in
his cell phone.  See White, 475 Mass. at
591, 593, quoting Riley, 573 U.S. at 395 (many "who own a cell phone [in
effect] keep on their person a digital record of nearly every aspect of their
lives").  Indeed, the judge found
that the defendant "had a significant privacy and possessory interest in
his [cell phone]," and that "[n]otably, the [d]efendant was using it
at the time of his arrest, speaking with Sergeant D'Alba to coordinate their
meeting."  Second, although the
Commonwealth lawfully seized the cell phone through a search incident to
arrest, the "existence of probable cause is relevant to [the defendant's]
possessory interest but far from dispositive to deciding the reasonableness of
the ensuing delay in seeking a search warrant."  Smith, 967 F.3d at 209.  Third, although the defendant did not seek
the return of the cell phone, "[p]ossessory interest is only one factor to
be considered in the over-all reasonableness calculus."  White, supra at 595.  "Even in circumstances where a
defendant's possessory interest is weak, a delay may be unreasonable if police
do not act diligently in applying for a warrant."  Id. 
"This is so in part because unreasonable delay 'affects [not] only
the person's possessory interest[],' but also the ability of the judiciary
'promptly [to] evaluat[e] and correct[] improper seizures.'"  Id., citing Burgard, 675 F.3d at 1033.  Finally, the judge found that although
Sergeant D'Alba maintained a demanding caseload of complex matters, and
"was diligent about his responsibilities and his caseload," the
"evidence does not account for four months of delay" because Sergeant
D'Alba admittedly put the effort to obtain the search warrant on the "back
burner."[10]
      The judge ultimately concluded based on
these findings that "[t]here is no legal precedent for finding a delay of
123 days to be reasonable, even with a compelling governmental
interest."  That conclusion is, to
date, correct under Massachusetts law. 
See White, 475 Mass. at 593, quoting Burgard, 675 F.3d at 1035
("once a warrantless seizure has been executed, the police 'must make it a
priority to secure a search warrant'"). 
To be clear, we recognize the persuasive value of Federal case law
holding that lengthy delays between seizing evidence and obtaining a search
warrant may be reasonable, see Sykes, 65 F.4th at 878-879; Stabile, 633 F.3d at
236; Blanchard, 544 F. Supp. 3d at 172, and we recognize that police diligence
in obtaining a search warrant is not dispositive under the White balancing
test.  See Cruzado, 480 Mass. at 283
n.9.  Further, we agree with the judge's
determination that the Commonwealth's interest in the content of the cell phone
was strong.  We also note that, unlike in
White and Cruzado where there was suspicion or probable cause to believe that
the cell phones contained evidence relevant to the crimes under investigation,
here the defendant was alleged to have used the cell phone itself in myriad
ways to entice the victims and to perpetrate the crimes against them.  Finally, our courts have recognized that some
delay in obtaining a search warrant may be reasonable where, as here, the
governmental interest in the seized item is critical, and where a defendant
does nothing to assert a possessory interest in the seized item.  See, e.g., Cruzado, supra at 282-284 (ten-day
delay in obtaining warrant to search cell phone reasonable where government's
interest in solving homicide was strong and defendant's interest in cell phone
was minimal as defendant claimed he only had phone for one day and had received
cell phone from "crack head"). 
That notwithstanding, there is no Massachusetts precedent upholding as
reasonable anything remotely approaching the 123-day delay in the present
case.  
      Finally, the Commonwealth argues that the
delay in seeking the search warrant was not unreasonable for the reasons
delineated in Arthur, 94 Mass. App. Ct. at 165-166.  There, we held that an eighty-five day delay
between the seizure of cell phones used in the commission of a crime and the
obtaining of a warrant to search the cell phones was not unreasonable.  Id.  We
grounded our holding on two critical distinctions from White.  First, in Arthur, supra at 165, the police
did diligently obtain a warrant to seize the cell phones -- within three days
of the offense -- and then subsequently sought a second warrant to search the
cell phones.  Second, the cell phones
used by the defendants in that case were "evidence of the crime
independent of their content," and could be used at trial to prove how the
defendants operated in a joint venture. 
Id.  See id. ("in proving the
joint venture, and the involvement of all three alleged perpetrators, the
Commonwealth might well decide to introduce the cell phones.
. . .  This evidentiary value
existed regardless of whether, on further investigation, the cell phones might
contain additional relevant evidence in their digital data").  See generally J.A. Grasso, Jr., Suppression
Matters Under Massachusetts Law § 7-6[a][2][iv] (2024 ed.).  In the present case, by contrast, the judge
found that "unlike Arthur, the Commonwealth has failed to demonstrate the
evidentiary value of the [cell phone] as a physical object, independent of its
electronic content."  We agree that
the evidentiary value of the cell phone hinged on the contents therein, and
"the police could not search its contents unless and until they applied
for a search warrant."  Smith, 967
F.3d at 209.  See id. ("this is not
like a case where the police seize in plain view a murder weapon or obvious
contraband like narcotics that retains investigative or prosecutorial value
regardless of any further search of its contents"); United States v. Pratt,
915 F.3d 266, 273 (4th Cir. 2019) (holding thirty-one day delay in obtaining
search warrant unreasonable, and rejecting government argument that cell phone
had independent evidentiary value, because "[o]nly the phone's files had
evidentiary value . . . the phone itself is evidence of
nothing").[11]  Accordingly, Arthur
is materially distinguishable and does not control.
      In short, despite the soundness of the
reasoning in the Commonwealth's argument, the Federal cases discussed supra,
and the dissent, infra, we cannot say that the judge erred in suppressing the
evidence because the Commonwealth failed to meet its "burden to show that
the delay of 123 days from the time the device was seized to the date of search
warrant application was reasonable."[12] 
We are constrained under White and the facts of this case to affirm the
order allowing the motion to suppress. 
See Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010) ("this court
is the highest appellate authority in the Commonwealth, and our decisions on all
questions of law are conclusive on all Massachusetts trial courts and the
Appeals Court").
Order allowing
motion to suppress affirmed.

      SINGH, J. (dissenting).  Where the cellular telephone (cell phone) was
properly seized as evidence during a search incident to the defendant's arrest
and the contents of the phone properly searched under the authority of a search
warrant issued on probable cause, the mere length of time that elapsed between
the seizure and the application for the search warrant cannot give rise to
suppression of evidence in the absence of "substantial and
prejudicial" violation of the defendant's constitutional rights or
statutes closely associated with constitutional rights.  Commonwealth v. Hernandez, 456 Mass. 528, 533
(2010).  See id. at 532-533 (discussing
exclusionary rule under Massachusetts law). 
No such violation has been established as would warrant suppression of
evidence in this case.
      The validity of the arrest warrant, the
search incident to arrest, and the search warrant are not in dispute.  Nevertheless, on the authority of
Commonwealth v. White, 475 Mass. 583 (2016), the court concludes that evidence
obtained from the search of the cell phone must be suppressed due to
unreasonable delay in seeking a search warrant. 
But White does not compel this result. 
First, the analysis employed by White to examine the impact of delay on
the reasonableness of the initial seizure (delay analysis) is inapplicable to
this case where the cell phone was permissibly seized incident to arrest as an
instrumentality of the crimes.  Second,
even if the White delay analysis applied, a proper application of the balancing
test would weigh in favor of reasonableness. 
Finally, a determination of unreasonableness would not require
suppression of evidence in any event.
      1. 
Applicability of delay analysis. 
White, 475 Mass. at 593-595, and all the cases relied on in its delay
analysis, dealt with the temporary warrantless seizure of an item pending the
issuance of a search warrant.[1]  The
court explained that, in this context, it is important for police to act
diligently in securing a search warrant. 
Id. at 593.  Although a
defendant's privacy interest in the item will be protected by the eventual
issuance (or denial) of a search warrant, the defendant's possessory interest
in the item is infringed on in the interim. 
See Segura v. United States, 468 U.S. 796, 806 (1984) (seizure affects
only possessory interests; search affects privacy interests).  A delay in seeking a warrant aggravates that
infringement and for this reason, a "seizure, even if 'reasonable at its
inception because based upon probable cause,' 'may become unreasonable as a
result of its duration.'"  White,
supra, quoting Segura, supra at 812.  In
this context, delay also affects the ability of the judiciary promptly to
evaluate and correct improper seizures. 
See White, supra at 595.
      Although the cell phone seizure in White
was unreasonable at the outset because it was not based on probable cause,
White, 475 Mass. at 592, the court nevertheless examined the length of time
between the seizure of the cell phone and the filing of an application for a
search warrant, emphasizing that police may retain an item seized without a
warrant for the short period of time needed to obtain a search warrant
"but must release the item if a warrant is not obtained within that
period."  Id. at 593.  That the item must be released in the absence
of a search warrant presupposes that there is no other legitimate basis on
which the item may be retained.
      Unlike in White, police in this case had
the lawful authority to retain the cell phone independent of the issuance of
any search warrant.  The cell phone was
seized pursuant to statutory authority, see G. L. c. 276, § 1
(during search incident to arrest, police may seize without a warrant fruits,
instrumentalities, contraband and other evidence of crimes for which arrest has
been made), as well as the search incident to arrest exception to the warrant
requirement, see Commonwealth v. Barillas, 484 Mass. 250, 254 (2020) (purposes
of search incident to arrest exception are preventing loss of evidence of crime
for which police have probable cause to arrest and stripping arrestee of
weapons that could be used to resist or facilitate escape). 
      The defendant was arrested on a warrant
for crimes involving child sexual assault and dissemination of matter harmful
to children.  At the time of the arrest,
police had firsthand information from the child victims that the defendant used
his cell phone in the commission of the crimes, specifically, to photograph the
children, to receive photographs of the children which he directed that they
send him, to show them images of a woman performing oral sex on him, and to
contact them in order to arrange secret meetings with them.  A cell phone belonging to the defendant would
therefore be not only mere evidence of the crimes, but an instrumentality of
the crimes.
      The motion judge recognized that the cell
phone was an instrumentality of the crimes, yet found that it had no
"evidentiary value" independent of its electronic content.  This was clear error.  As an instrumentality of the crimes, the
phone itself was relevant to corroborate the victims' accounts -- the fact that
the defendant had a cell phone when he was arrested capable of doing what the
victims alleged.  Moreover, once the
police seized the phone, they could use it to secure witness identification of
it and later introduce it in evidence at trial as the phone used to commit the
crimes.  Even if it turned out that the
phone had no relevant content on it (perhaps because it had been wiped clean),
the physical phone would still have the evidentiary value of corroborating the
victims' accounts.  Contrast White, 475 Mass.
at 590 (no evidence that cell phone was used in commission of crimes).  In any event, the salient point is not how
valuable the phone was as an evidentiary matter, but rather that the police had
the lawful authority to hold on to it as evidence of the crimes, regardless of
its electronic content.  
      As the police had probable cause to
believe the phone was an instrumentality of the crimes for which the defendant
was arrested, the police were authorized to seize it and keep it as long as
necessary for it to be used in the prosecution of the defendant.  Cf. G. L. c. 276, § 3
("If an officer in the execution of a search warrant finds property or
articles therein described, he shall seize and safely keep them, under the
direction of the court or justice, so long as necessary to permit them to be
produced or used as evidence in any trial").  See Commonwealth v. Sacco, 401 Mass. 204, 207
n.3 (1987) ("Property seized pursuant to a search warrant must be restored
to its owners when it is no longer needed. . . .  The same requirement logically applies to
property seized without a warrant").
      Because the defendant had no right to the
return of the cell phone prior to the conclusion of the case, there was no
violation of his rights flowing from its continued detention.  See Commonwealth v. Arthur, 94 Mass. App. Ct.
161, 165-166 (2018) (defendant had no basis to expect return of cell phone
prior to conclusion of trial where it was properly in police custody as
evidence in case against him).  Any delay
in seeking a warrant to search the contents of the cell phone is irrelevant
since there was no unlawful intrusion on the defendant's possessory right
pending the search warrant.  To the
contrary, the "intrusion" occasioned by the seizure of the cell phone
in this case was specifically authorized by statute, see G. L.
c. 276, § 1, as well as by the search incident to arrest exception to
the warrant requirement, see Barillas, 484 Mass. at 254.
      The diligence requirement is aimed at
minimizing the unlawful intrusion on the defendant's possessory interest.  But here, even if the search warrant had been
obtained immediately after seizure, the cell phone would have lawfully remained
in police custody as an instrumentality of the crimes to be used in the
prosecution of the defendant.  The timing
of the search warrant would thus have no separate impact on the defendant's
possessory interest.  Cf. Commonwealth v.
Gelfgatt, 468 Mass. 512, 524 (2014) (requiring defendant to enter encryption
key to unlock computers seized by police not violation of Fifth Amendment,
because defendant already said computers were his).  The delay analysis is therefore inapplicable
in the circumstances of this case.[2]
      2. 
Balancing test.  To the extent
that the delay analysis applies, a proper balance between "the nature and
quality of the intrusion on the individual's Fourth Amendment interests against
the importance of the governmental interests alleged to justify the
intrusion" would result in the conclusion that the seizure of the cell
phone was reasonable in this case. 
White, 475 Mass. at 594, quoting United States v. Place, 462 U.S. 696,
703 (1983).[3]  The importance of the
governmental interest justifying seizure of the cell phone cannot be overstated
-- the phone was seized to preserve evidence important to prosecuting the
defendant for sexual crimes against children. 
See Commonwealth v. Feliz, 486 Mass. 510, 517 (2020) ("sexual
exploitation and abuse of children constitutes a government objective of
surpassing importance").[4] 
      With respect to the nature and quality of
the intrusion, the seizure of the cell phone was made on statutory authority
and probable cause.  See Place, 462 U.S.
at 702-703 (probable cause justifies greater intrusion than reasonable
suspicion).  Compare White, 475 Mass. at
592 (police lacked probable cause to seize cell phone).  Additionally, the intrusion was only on the
defendant's possessory interest, not privacy interest.  See Segura, 468 U.S. at 810 (heightened
protection accorded to privacy interests not implicated where seizure at
issue).  Although the defendant was
deprived of possession and use of the phone for an extended period of time
pending the search warrant, he was not entitled to have the phone, because it
was properly held by the police as evidence in the case.  The "actual interference with [his] possessory
interests in the [cell phone] was, thus, virtually nonexistent."  Segura, 468 U.S. at 813.  Cf. id. (where defendants were in custody
during time they claimed violation of possessory interest in their home).  Likewise, there was no impact on the judiciary's
ability to promptly evaluate and correct improper seizures since the continued
seizure of the cell phone as evidence in the case required no further judicial
permission.  In any event, the parties
agree that the seizure was proper in this case, so this factor should have no
weight in the balance.
      With respect to the delay itself, it was
eminently reasonable for the police to put the search warrant on the "back
burner," and instead focus on other pressing aspects of this investigation
(as well as other serious and demanding public safety obligations), since the
cell phone was going to remain in police custody as evidence in the case.  See Segura U.S. at 812 (not unreasonable for
officers to focus on processing people arrested before turning to search
warrant for house where occupants of house were in custody so their possessory
rights were not impacted by delay).  This
is not a case where the defendant sought the return of the cell phone or
articulated any hardship or prejudice from being dispossessed.[5]  See United States v. Johns, 469 U.S. 478, 487
(1985) (where defendants never requested return of seized property, they failed
to establish that delay in search of property affected their legitimate
interests).  In the balance, any delay in
seeking the warrant in this case did not render the initial seizure of the cell
phone unreasonable.
      To the extent that every warrantless
seizure may be reviewed for reasonableness, it cannot be maintained that the
seizure of the cell phone pursuant to statutory authority and search incident
to lawful arrest was unreasonable in any sense. 
See Commonwealth v. Entwistle, 463 Mass. 205, 213 (2012) (touchstone for
both Fourth Amendment and art. 14 is reasonableness).  Even if a search warrant had been obtained
the day after its seizure, the cell phone was not being returned to the
defendant.  Indeed, the cell phone itself
was not suppressed in this case.  If the
cell phone was lawfully seized and held, then the defendant had no possessory
interest in it for the police to infringe on, and he could not have suffered
the level of constitutional deprivation that might justify application of the
exclusionary rule.
      3. 
Exclusionary rule.  In White, 475
Mass. at 595, evidence obtained from the cell phone search was suppressed, but
not because of unreasonable delay in obtaining a warrant.  Rather, the court held that, "[e]ven if
the delay were reasonable, any evidence recovered from the telephone would
nonetheless require suppression on the ground that it was the fruit of an unlawful
seizure."  This is so, because the
warrantless seizure in White was without probable cause and so "the
seizure was by definition improper." 
Id. at 592.  Delay had nothing to
do with it.
      Here, by contrast, the warrantless seizure
was supported by probable cause, specifically authorized by statute, see
G. L. c. 276, § 1, and permitted by the search incident to
arrest exception to warrant requirement, see Barillas, 484 Mass. 250, 254
(2020).  If delay in obtaining a search
warrant could nonetheless convert this seizure into an unreasonable and
therefore unconstitutional one, then there still would remain the question
whether evidence obtained as a result of that seizure should be excluded.  See Commonwealth v. Gomes, 408 Mass. 43, 46
(1990) ("mere fact that an unlawful search and seizure has occurred should
not automatically result in the exclusion of any illegally seized
evidence").
      Although the judicially created remedy of
the exclusionary rule bars the use of evidence derived from an unconstitutional
search or seizure, a "practical application [of the rule] must strike a
balance between the goal[] of deterring official misconduct and the competing
societal interest in convicting the guilty" (quotations and citations
omitted).  Commonwealth v. Diaz, 496
Mass. 210, 214 (2025).  Suppression may
not be appropriate if the evidence is "sufficiently attenuated from the
underlying illegality."  Id.,
quoting Commonwealth v. Damiano, 444 Mass. 444, 454 (2005).[6]  In making the attenuation determination, the question
is not whether the illegal actions of the police were a "but for"
cause of the evidence being found, but rather "whether the evidence for
which suppression is sought 'has been come at by exploitation of that
illegality or instead by means sufficiently distinguishable to be purged of the
primary taint.'"  Diaz, supra,
quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963).
      Here, the evidence was obtained by virtue
of a search warrant supported by probable cause.  Neither the seizure of the cell phone nor the
delay in seeking a warrant was exploited in order to obtain the evidence from
the cell phone.  Indeed, the information
in the affidavit supporting probable cause to search the cell phone existed
prior to seizure of the phone.  Contrast
White, 475 Mass. at 586-587 (probable cause to search phone developed after
seizure).  The alleged illegality of
delay was occasioned by the burdensome workload of the police, as well as the
reasonable belief that the phone was properly in police custody for the
duration.  It did not have the purpose or
effect of giving the prosecution an advantage or harming the defendant's
legitimate interests.  See Commonwealth
v. Borges, 395 Mass. 788, 795-796 (1985) (attenuation looks at purpose and
flagrancy of police misconduct). 
Although our courts have not adopted the "good faith"
exception to the exclusionary rule, we have instead focused on whether the
alleged violations are "substantial and prejudicial."  Hernandez, 456 Mass. at 532-533.  On this record, such a violation has not been
established.  There should be no
suppression of evidence in this case.

footnotes

[1] The
uncontested facts stem from the motion judge's decision on the motion to
suppress, which she derived from the four corners of Sergeant Detective Anthony
D'Alba's affidavit submitted in support of the application for a search
warrant, as well as from the testimony and exhibits at the suppression hearing.

[2] A pseudonym.

[3] A pseudonym.

[4] We use the
nomenclature employed by the judge in her written memorandum and order.

[5] Amanda
explained at her interview that the defendant had given her two cell phones,
one when she was living with him and another after she was removed from the
defendant's home.  Amanda used these cell
phones to communicate with the defendant. 
Through the second cell phone, the defendant set up meetings with Amanda
before school, "during which time he would rape her."  The defendant instructed Amanda to delete
their text messages from her cell phone.

[6] The judge
ruled that the police had probable cause to seize the cell phone, and that the
seizure was justified as a valid seizure incident to arrest.  The defendant does not challenge these
rulings on appeal.

[7] On appeal,
the defendant does not challenge any of the judge's findings of fact.  He does, however, assert that some
uncontested facts were omitted from her findings, including that Sergeant
D'Alba testified that (1) "it was not uncommon for an individual to own
multiple phones," and (2) in the interviews and investigation, nobody told
Sergeant D'Alba what the cell phone used by the defendant to perpetrate the
crimes looked like or what model it was.

[8] In the
Superior Court and on appeal, neither party argued that art. 14 of the
Massachusetts Declaration of Rights provides different or greater protections
than the Fourth Amendment to the United States Constitution.  We thus apply no material distinction between
the two herein.

[9] The judge did
not make any findings as to whether or how long the defendant was in custody
following his arrest on July 18, 2019. 
The docket reflects, however, that bail was "posted" on
January 10, 2020.

[10] We
acknowledge the judge's finding that Sergeant D'Alba "was diligent about
his responsibilities and his caseload," and nothing herein should be read
to infer otherwise.  However, the
ultimate issue is not whether the officer was diligent in his work, but whether
he promptly applied for a search warrant in this case and whether any delay was
reasonable under the language and parameters delineated in White, supra at
593-595.

[11] Although
Sergeant D'Alba testified that he "learned that the prosecutor intended to
use the [cell phone] as a piece of physical evidence at trial, regardless of
whether a search warrant was executed on the [cell phone]," the
prosecutor's intent does not control our analysis.  Rather, the analysis under Arthur turns on
whether the cell phone had evidentiary value regardless of the contents
therein.  Where, as here, the evidentiary
significance of the cell phone was not apparent unless and until it was
searched, our holding in Arthur does not apply. 

[12] We note that
the judge also found, regarding the "future admissibility" of the
cell phone at trial, that "the Commonwealth did not introduce evidence at
the motion hearing to indicate that [Betty] described or identified the seized
[cell phone] as the device the [d]efendant used to show her the photograph."

footnotes for dissenting

[1] See Segura v.
United States, 468 U.S. 796, 812 (1984) (impoundment of house pending securing
of search warrant); United States v. Place, 462 U.S. 696, 715-716 (1983)
(Brennan, J., concurring in result) (discussing temporary detention of luggage
pending canine search, which led to search warrant); United States v. Burgard,
675 F.3d 1029, 1032 (7th Cir.), cert. denied, 568 U.S. 852 (2012) (impoundment
of cell phone pending search warrant); United States v. Laist, 702 F.3d 608,
610-611 (11th Cir. 2012) (after consent revoked, retention of computer pending
search warrant); Commonwealth v. Kaupp, 453 Mass. 102, 105 (2009) (impoundment
of computer pending search warrant); Commonwealth v. Gentile, 437 Mass. 569,
573 (2002) (impoundment of truck pending search warrant); Commonwealth v.
Taylor, 426 Mass. 189, 195 (1997) (temporary detention of defendant pending
search warrant to seize his clothes).

[2] Where there
is no actual impact on a defendant's possessory or privacy interest, the
court's examination of the internal workings of a police investigation and its
insistence on elevating certain priorities over others risks intrusion on an
area committed to another branch of government. 
See Commonwealth v. Bernardo B., 453 Mass. 158, 161 (2009).

[3] Although
White, supra at 583, characterized the balancing test as determining the
"reasonableness of the delay" in conducting a search, Place, supra at
703, stated that the test was for the purpose of determining the reasonableness
of the seizure in light of delay. 
Arguably, focus on reasonableness of the delay itself skews the balance.

[4] And in this
case, the facts suggested that the cell phone may have contained images that
were not merely evidence of crimes, but contraband that was unlawful to possess
-- child sexual exploitation material. 
See Commonwealth v. James, 493 Mass. 828, 834-838 (2024).  See also Feliz, supra at 517, quoting Paroline
v. United States, 572 U.S. 434, 440 (2014) ("Child pornography is a 'permanent
record of the depicted child's abuse, and the harm to the child is exacerbated
by its circulation'").

[5] The
defendant's failure to request return of his phone at any point is strong
indication that the extended seizure did not occasion the sort of infringement
on his possessory rights as is presumed. 
It could well be that the defendant had multiple phones and was not at
all put out by the seizure of one of them; indeed, there was evidence that the
defendant provided multiple phones to the victims as part of his scheme to
sexually exploit them.  Cf. United States
v. Smith, 967 F.3d 198, 208 (2d Cir. 2020) (fact that defendant had alternative
devices and never requested seized tablet back weighed in favor of government).

[6] Although
often referred to as the "attenuation exception," Diaz, supra, the
attenuation doctrine is not an exception to the exclusionary rule, but rather
"a test of its limits." 
Commonwealth v. Fredericq, 482 Mass. 70, 78 (2019), quoting R.G.
Stearns, Massachusetts Criminal Law:  A
District Court Prosecutor's Guide 172 (38th ed. 2018).